# EXHIBIT

# "A"

96338

Civil Action No. _19-V-989_

Date Filed _Oct, 04, 2019_

| Magistrate Court | ☐ |
| Superior Court | ☑ |
| State Court | ☐ |

**Georgia, Gwinnett County**

Attorney's Address

23 STILLWATER TRACE maie
GRIFFIN, GA 30223

_Richard Carruthers_ **Plaintiff**

VS.

_Loan Care_ **Defendant**

Name and Address of party to be served.

CT CORPORATION
289 SOUTH CULVER ST,
LAWRENCEVILLE, GA 30046

**Garnishee**

## Sheriff's Entry Of Service

**Personal** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**Notorious** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.
Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at the residence of defendant.

**Corporation** ☐ Served the defendant _Loan Care_ a corporation
by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail; First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ 11 day of _Oct_, 20 _19_.

_____ **Deputy**

Sheriff Docket _____ Page _____

_____ **Gwinnett County, Georgia**

WHITE: Clerk     CANARY: Plaintiff / Attorney     PINK: Defendant

SC-2 Rev.3.13

## IN THE SUPERIOR COURT OF SPALDING COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
| Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
| Defendant | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the Plaintiff's foregoing **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE, RULE NISI,** and the supporting Affidavits and Exhibits by delivery of a copy of same to the Sheriff of Gwinnett County for Sheriff's service to the registered agent for:

LOAN CARE SERVICING CENTER, INC.
Dba LOAN CARE
LOAN CARE, LLC.
Dba LOAN CARE
   **Serve:**  C T Corporation System
         289 South Culver Street
         Lawrenceville, Gwinnett County, GA 30046

This 09th day of October 2019.

Richard Carruthers, Plaintiff Pro Se

IN THE SUPERIOR COURT OF SPALDING COUNTY

STATE OF GEORGIA

RICHARD CARRUTHERS,                                  :

    Plaintiff,                                        :

v.                                                   :           File No. 19V-989

LAKEVIEW LOAN SERVICING, LLC,                        :

Assignee of Loan Care Servicing, Inc. Via            :

Mortgate Electronic Registration Systems, Inc. as    :

Nominee for Impac Mortgage Corp.                     :

d/b/a Cashcall Mortgage                              :


LOAN CARE SERVICING CENTER, INC.,                    :

d/b/a LOAN CARE                                      :

LOAN CARE, LLC,                                      :

d/b/a LOAN CARE                                      :

                                                     :

JAMES E. ALBERTELLI, P.A.                            :

d/b/a ALBERTELLI LAW and ALAW                        :

                                                     :

and Unknown Conspirators, Affiliates, Agents,        :

and Jane Does and Richard Roes,                      :

    Defendants.                                       :

## RULE NISI

    The above-styled case having been duly filed, the case shall be set down for a hearing on the Plaintiff's Emergency Motion for Temporary Restraining Order on October 21, 2019 at 9:00 a.m. in Courtroom 2-B of the Fayette County Courthouse in Fayetteville, Georgia.

It is SO ORDERED, this 9th day of October, 2019.

John C. Carbo, Senior Judge

Spalding Superior Court

Griffin Judicial Circuit

IN THE SUPERIOR COURT OF SPALDING COUNTY

STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
|      Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
|      Defendant | ) |

## EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER WITHOUT NOTICE

Comes now Richard Carruthers, pro se, the above captioned Plaintiff

makes complaint pursuant to OCGA 44-14-162, et. seq. to this Honorable Court

as follows.

The Plaintiff faces an unlawful non-judicial foreclosure caused by the

wanton, capricious, and on-going errors in judgment and practice of the

Defendants, constituting a tort in violation of the rights of the Plaintiff to be free

of interference in the negotiation of property tax matters with a state official, and

under the terms of a certain Security Deed and Note executed on November 23,

Page 1 of 22

2016 containing a power of sale which, Defendants seek to foreclose by public outcry on Tuesday, November 05, 2019 on the steps of the Spalding County courthouse.

Plaintiff seeks a Temporary Restraining Order to enjoin the Defendants, its agents, and the Sheriff of Spalding County from advertising, slandering the title of Plaintiff's property and conducting such sale under power pending an emergency hearing on the merits and such further relief as the court shall deem appropriate.

The Superior Court rather than the State Court has jurisdiction of this case by virtue of the fact that the issues involve land and title and address matters not exclusively vested in the State Court.

## **BACKGROUND**

The parties to the action forming the case at bar entered into an agreement intended to govern a residential loan transaction on improved property located at 23 Stillwater Trace, Griffin, Spalding County, GA 30223 on November 23, 2019.

Evidence of that agreement, the Security Deed (exhibit 1), provides for the periodic monthly payments of principal and interest, and it requires the inclusion of payments for impounds to cover real estate taxes and home owner's insurance with payments beginning on January 1, 2017, monthly amount of $ 2,713.04.

On or about March 07, 2017, Plaintiff made application for homestead exemption, which was granted by the Spalding County Tax Assessor with a tax classification of L7, which resulted in a zero tax liability on the property for tax year 2017. Notice of the new tax status was delivered by Plaintiff to Defendant,

refund of the tax impounds was requested, and subsequently made on or about June 08, 2017, which resulted in a new periodic monthly payment of $2247.47.

Though, homestead tax from year to year is typically automatically renewed, the Plaintiff became aware that its 2018 tax status would not be continued under the terms of the 2017 tax year zero-tax status. On June 25, 2018, Plaintiff made timely notice of appeal which would stay any tax due status.

On October 15, 2018, Plaintiff became aware that Defendant had pre-emptively made unsolicited payment of the disputed 2018 property taxes in the amount of $4954.38 to the detriment of the Plaintiff's tax appeal and creating an escrow shortage. Plaintiff made immediate notice and demand to Defendant, that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff continued to make, and Defendant continued to accept the periodic monthly payments in November 2018 that did not include an impound for real estate taxes. The December 2018 monthly payment without impound for real estate taxes was tendered by Plaintiff to Defendant, but was not properly credited, though it was applied in January 2019 in incorrect accounting amount and in variance to the Security Deed. Though, Plaintiff has steadfastly noticed Defendant of the payment accounting dispute, Defendant, in contravention to the terms of the Security Deed has refused to correct the issue.

On February 11, 2019, Plaintiff became aware that Defendant had pre-emptively made a second unsolicited payment of the disputed 2018 property taxes in the amount of $4803.76, again to the detriment of the Plaintiff's tax appeal and increasing the escrow shortage. Plaintiff made immediate notice to

Defendant, including demand to Defendant that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff from January 2019 thru June 2019 has made copious volume of communication with Defendant to correct all payment disputes, to no avail. (Exhibit 2.) Defendant has acted with bad faith to coerce Plaintiff into making payments to Defendant including an impound for real estate taxes which are not due and owing by Plaintiff, in contravention to the terms of the Security Deed.

Under the Defendants' September 26, 2019 NOTICE OF FORECLOSURE SALE, (exhibit 10) Defendants allege an unspecified default under the terms of the Security Deed.

## PLAINTIFF'S RESPONSE TO NOTICE OF FORECLOSURE

I.   Per OCGA § 11-3-308, Plaintiff denies that Defendant holds a valid and authentic Security Deed to permit a non-judicial foreclosure of the Defendant's property.

II.  Plaintiff denies that it is in default.

III. Plaintiff shows the court that Defendant's foreclosure notice is barred because Defendant has not made 10-day demand for cure; nor the 30-day notice required prior to acceleration provided for in paragraph 21 of the Security Deed. (exhibit 1, p. 11)

IV.  Plaintiff shows the court that Defendant's foreclosure notice is barred because it fails to state the default under which it claims authority to commence its non-judicial foreclosure. (exhibit 1, p. 11)

V.   Plaintiff denies that the party claiming possession of the Security Deed is a lawful holder of said purported Security Deed.

VI.    Plaintiff shows the court that the Defendants seek to import a legal entity not legally existing in Georgia.

VII.   Plaintiff shows the court that the interlocking nature of the Defendant parties makes each the alter-ego of the other, that the Defendant(s) are "affiliate" entities per the meaning as set forth in 12 U.S.C. Section 1841, et seq., rendering nugatory the intent of the legislature when it enacted the non-judicial foreclosure statutes.

VIII.  Plaintiff shows the court that it has offered tender to Defendant of all amounts admittedly due, but has been refused at each request. "Equity believes in good conscience, honesty, and morality. It will not sanction oppression or extortion demanded by a party because of his own illegal act. ... A party who violates the law knowingly and willfully, and thereby injures another, cannot demand of the latter party to do equity before he can establish his right and place himself in status quo." Benedict v. Gammon Theological Seminary, 122 Ga. 412 (1905)). See also Coates v. Jones, 142 Ga. 237 (1914) (plaintiff was exempt from tender and was allowed to maintain an equitable petition to have a sheriff's sale set aside because of fraudulent conduct by the Defendant).

IX.    Plaintiff shows the court that if the withholding of payments from an entity that would fail to apply such payments as prescribed in its contract (Security Deed) is a violation of law, then the court should consider the lack of legal remedy under Georgia law and grant relief on the basis of equity.

Page 5 of 22

X.    Plaintiff shows the court that if it is in default, such default was caused by and resultant from the intentional acts of the Defendant foisted upon the Plaintiff under color of law.

XI.    Plaintiff shows the court that the Defendants breached the terms of the Security Deed, negating Plaintiff's ability to perform under said Security Deed.

XII.    Plaintiff shows the court that the actions of the Defendants, when viewed as a whole, reveal a conspiracy to defraud the Plaintiff by a scheme of property value equity stripping.

XIII.    Plaintiff shows the court that it is deprived of due process by the methods employed by the Defendants in utilizing the non-judicial foreclosure statutes and a full hearing before a judge is the only remedy which will restore the sanctity of law.

XIV.    Plaintiff shows the court that it entered into the contract (Security Deed) in good faith with the expectation of faithful compliance by all parties, yet the behavior of the Defendant shows there was either never a knowing understanding of the contract by the Plaintiff, or the Defendant entered without a good faith expectation that it would honor the terms of the Security Deed, either conclusion, if true, making the contract a nullity ab initio.

XV.    Plaintiff shows the court that under the facts and circumstances present in this case a non-judicial foreclosure by Defendant constitutes an abuse of power, the equivalent of illegal self-help.

## COUNT --I   Tortious Interference by Defendant

The Defendant had a fiduciary duty to Plaintiff to honor the instructions of the Plaintiff in keeping the property (collateral) free of tax lien. Plaintiff's actions in appealing a change in real estate tax status (Exhibit is wholly in the realm of maintaining the relationship between Plaintiff (borrower) and Defendant (lender) vis-à-vis the residence (collateral) remaining tax lien free. By making payment of the disputed taxes, Defendant placed its thumb on the scale adverse to the interest of the Plaintiff in recovery of zero tax status. Plaintiff had a lawful right to appeal the real estate tax status of its property. Defendant interfered with the process, over the notice and objections of the Plaintiff, harming the timely resolution of the appeal, which remains pending at this distant date. The claim for outstanding taxes advanced, but not due, forms the primary point of conflict between the Plaintiff and the Defendant because Defendant insists on becoming indemnified by Plaintiff over an error made by Plaintiff in interfering with the real estate tax appeal of Plaintiff.

## COUNT --II   Breach of Contract by Defendant

Plaintiff has sought resolution of the dispute between itself and Defendant by offer to make payments of funds to include principal and interest, and impound for home owner's insurance, but without impound for real estate taxes during the pendency of the tax appeal with the Spalding County Tax Assessor. Defendant has steadfastly refused this reasonable resolution, instead preferring to pursue a non- judicial foreclosure against Plaintiff. Yet the Security deed on

page four, paragraph 3, in pertinent part expressly permits such arrangement, to wit:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any and all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow items at any time. Any such waiver may only be in writing.

Defendant attempts to deflect its error by stating its fear that a real estate tax delinquency could become a tax lien superior to the Security Deed, yet such circumstance is provided for in the Security Deed at page 5, paragraph 4 imposing a specific duty on the borrower:

> (b) (Borrower) (must) contest the lien in good faith by, or defends against enforcement of the lien while those proceedings are concluded...
>
> If Lender determines that any part of the property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days on which that notice is given, Borrower shall satisfy the lien...

Yet no lien has attached to the property, and the Defendant (Lender) has not identified any lien. Nor has the Defendant (Lender) tendered any notice. Instead it has heavy handedly made payment for an unliquidated debt not due per the tax authority (exhibit ) defended by the Plaintiff (borrower) (exhibit )and seeks to foist that payment upon Plaintiff. This tax payment by Defendant forms the crux of the matter at bar. Plaintiff does not owe the amounts paid by Defendant, and refuses to pay the illegal claim now being imposed upon Plaintiff. The contract

does not permit the Defendant to act as it is attempting to here—creating a debt, then forcing that debt upon Plaintiff against threat of foreclosure.

Defendant refuses to apply payments per the terms set out in the Security Deed. At Security Deed page 4, paragraph 2, the agreed method of payment handling is set out.

...(A)ll payments...shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.

Defendant has refused to abide by this directive. It has unilaterally decided to apply payments first to part (c) recovery of an escrow shortage that it created, adverse to the interests of the Plaintiff. This is a clear violation of the terms of the Security Deed.

Further, Defendant stubbornly refuses to resolve the matter per the reasonable offer of the Plaintiff by refusing to either waive the escrow for real estate tax impounds, or to modify the Security Deed by removal of the requirement for real estate tax impounds, altogether. The Defendants alternatively claim that they are prohibited from such action by law, or they do not have the ability to do so. As to the law, this loan is governed by a VA guarantee. (exhibit 1, p. 13)

On September 15, 2004 in the VA Pamphlet 26-7, Revised, Chapter 9: Legal Instruments, Liens, Escrows and Related Issues, part 11. Escrow for Taxes and Insurance, (Exhibit 4) the VA issued a change notice which states

VA does not require the lender to establish escrow accounts for the collection and payment of property taxes, hazard insurance premiums,

and similar items. However, it is the lender's responsibility to ensure that these items are paid timely.

A lender who chooses to escrow for taxes and insurance must comply with applicable laws, including the Real Estate Settlement Procedures Act (RESPA).

## COUNT --III  Violation of the Fair Debt Collection Practices Act
## "FDCPA" 15 USC 1692 et seq. by Defendant

**Plaintiff is exposed to a negligent infliction of emotional distress caused by the actions of Defendant's agents.**

As recently as October 1, 2019 at 10:47 am, Defendant has caused physical trespass onto the property of the Plaintiff by its collection agents preceded by a real estate appraiser in June 2019, and subsequently each month by numerous parties ostensibly seeking to verify the occupancy status of the property, and agents claiming to urge telephone contact with the lender under the guise of having lost the phone numbers of the Plaintiffs. This is an illegal harassment practice of the Defendant. The entering onto the land constituting the property of Plaintiff does not reveal whether the Plaintiff is in occupancy, nor is continued occupancy by Plaintiff a duty required under the Security Deed, only property preservation is required. Plaintiff is exposed to a negligent infliction of emotional distress caused by the actions of Defendant's agents, notwithstanding notice from Plaintiff (email July 03, 2019). Defendant continues to willfully breach the quiet enjoyment of the Plaintiff by these acts.

Rather than write volumes at this point, which would only distract from the primary matter at hand—a wrongful non judicial foreclosure, please allow a

less than exhaustive enumeration of the FDCPA violations— which Plaintiff will

prove at trial were committed against Plaintiff by Defendant, to Plaintiff's harm.

1 Failure of Disclosure of Purpose.
2. Failure of Disclosure of Identity
3. Violation of the Obligation to Respect Debtor's Privacy
4. Slander of title
5. Failure to verify disputed debt
6. Failure to identify the original creditor
7. Violation of Obligation of debt collection agency to report dispute to credit
reporting agency
 8. Advertising existence of debt
 9. Harassment
10. Violation of Honesty and Fair Dealing

   The residence is the workplace of the Plaintiff and the home of the

plaintiff spouses, three (3) minor children, and one (1) college enrolled adult over

the age of eighteen. Plaintiff has been harmed by having the occupants of the

home exposed to the presence of strangers on the property without notice and

giving rise to fears of what sinister purpose those trespassers intend.

   Defendant's illegal visit orders give rise to the following harms to Plaintiff.

The youngest, a 6-year old experiences nightmares two to three times a week. The

next oldest, a 17-year old believes he needs to become a famous actor to support

his parents to furnish them a fence to protect against intruders, and the

unemancipated 19-year old is fearful of venturing outside or to college over fears

of uncertain adverse consequences in evidence by the presence of unexplained

visitors and passers-by. Plaintiff spouse has resorted to landscape thinning,

multiple alarm devices, and several cameras in her effort to be safe at home. The

infliction of emotional harm by the Defendant has far reaching consequences.

   Plaintiff seeks leave of the court to make Motion to Rely on Foreign Law to

allow this court to rule on the matters at this count should a hearing be granted

on this matter.

## COUNT --IV  Equity Stripping  facilitated by FDCPA violation--
## Advertising existence of debt

Plaintiff shows the court, that on or about June 20, 2019, an unsolicited and uninvited visit was made to the property of the Plaintiff by a person representing himself as a real estate appraiser. Subsequently, on information and belief Loan Care, et al was advised that the property is worth $ 600,000. This number was gleaned without an interior inspection which was requested and refused. Thereafter, the Albertelli Law Firm has made no follow-thru on any promise to validate the debt since July 22, 2019 (exhibit 8, p 33), nor to mitigate damages under our offer, nor any offer from the lender's side. The Plaintiff, seeks leave of the court to prove this count by investigating what parties are circling in wait for a foreclosure which would result in a loan balance ($ 430,000) knock off by the lender followed by a market sale and the stripping of the property's equity from the Plaintiff.

### ARGUMENT

OCGA 44-14-162, et. seq., the non-judicial statute, substitutes private remedy pursuant to contract terms, for that of a thoughtful, educated, principled jurist who applies the laws to the facts of each case. The legislature believed that similarly principled parties operating as lenders could be trusted to carry out the same judgments as would impartial jurists hearing the facts of the case and applying the applicable law, yet the rise of predatory lending has been a too often result of the legislative latitude permitted in Georgia non-judicial foreclosure law. It is attractive to lenders of poor character to operate in a state where they can

Page **12** of 22

speedily foreclose with little notice or legal limitation. The reality is the lender decisions are not often made by people of the caliber envisioned by the legislature. The decisions are often made by overworked clerks, sometimes heady, even haughty, with the power that their position brings to the consumer marketplace and the intimidation / coercion power attendant thereto. (Exhibit 5).

Notice that the power to avoid this problem rested upon one decision—to accept a payment without impounds for real estate taxes. The Security Deed permitted this by waiver or modification. The VA guarantee terms permitted this by directive since 2004. Yet these lenders found that the property on the Security Deed was worth at least $ 600,000, an amount over any possible balance accounting that would result in a windfall profit to the lender if foreclosed and subsequently resold quickly post foreclosure.

Is it a surprise that outcomes requiring judicial intervention are the result of our system of lax foreclosure laws? No, they may be expected, in an environment that permits transactions of this merit and financial value under the dearth of law governing the consumer housing/lending industry in Georgia. The non-judicial foreclosure law begs for entry of those who would predate on unwary Georgia consumers. Hence, the need of affected parties to seek the relief of this Courts as Plaintiffs.

Plaintiff shows the court that Defendant, directly, and through counsel of record, was served notice of the complaints raised in this filing since June 2019. (Exhibit 6) Yet, Defendant continues to communicate an unwillingness to adhere to the law of the contract, and stubbornly moves forward with a wrongful non-

judicial foreclosure under the flawed judgment that has dogged this matter all of 2019. Only order of the court will persuade the Defendant to comply.

Plaintiff is grievously harmed-- by this abuse of power resultant from lack of due process that continues to this moment, and to the peril of being exposed to the consequences of this departure from legal and accepted conduct.

Plaintiff shows the court that irreparable harm and damage will be wrought upon Plaintiff unless this Court immediately enjoins the Defendant, its agents, and the Sheriff of Spalding County from performance of a non-judicial foreclosure on the property of this Plaintiff.

Plaintiff shows the court that it has no equally speedy remedy. An ex-parte order of this Court is necessary because a full adjudication could not take place with notice until substantially after Plaintiff and the minor children of the Plaintiff would have been otherwise exposed to the indignity, physical health risk, embarrassment, psychological harm, and full brunt of an illegal consequence resultant from a wrongful non-judicial foreclosure.

Plaintiff shows the court that it is capable of tender with the clerk of the court all sums for principal, interest and insurance impounds that would become owing during the pendency of this case.

Plaintiff shows the court that there is no adequate remedy at law since real estate is unique, specific, and not amenable to static valuation. The nature of a non-judicial foreclosure specifically suspends the law of the state for the private law of the contract.  It is that real estate financing contract upon which this Plaintiff seeks enforcement by court decree.

Plaintiff shows the court that money damages would be impossible to quantify and inadequate to compensate Plaintiff for the above stated reasons. However, Plaintiff urges that the financial harm would be no less than the jurisdictional minimum of this Court, and could reach seven figure amounts, for which this Plaintiff seeks to mitigate such damages by imploring the Court for the relief outlined at the end of this motion.

## THEORIES UPON WHICH PLAINTIFF EXPECTS TO PREVAIL

Plaintiff shows the Court that in a hearing on the merits it expects to prevail on its pleadings as follows:

1.

Plaintiff would prevail due to Defendant's failure to legally possess a valid Security Deed permitting non judicial foreclosure, and by virtue of Plaintiff's readiness to cure any default as prescribed under the terms of the Security Deed.

2.

Plaintiff would prevail due to Defendant's failure to conform to the terms of the Security Deed by providing accurate accounting of payments made by the Plaintiff; and by compliance with the clauses precedent to acceleration and cure.

3.

Plaintiff would prevail due to Defendant's failure to provide accurate billing, correct billing errors and comply with the FDCPA, which compliance would have negated the need to seek judicial protection.

4.

Plaintiff would prevail on an equitable basis due to Defendant's refusal to accept undisputed sums owing between the parties, in favor of a wrongful non-

judicial foreclosure intended to oppress the Plaintiff, displaying evidence of malice, bad faith, and ill intent.

**Wherefore**, Plaintiff has made Complaint to the Superior Court from the 09-26-2019 NOTICE of FORECLOSURE and humbly requests the following relief:

A. Issue of a Temporary Restraining Order Without Notice prohibiting and enjoining the Defendant, its agents, and the Sheriff of Spalding County from continuation of a wrongful non judicial foreclosure against this Plaintiff and property; and

B. An order directing the Defendant to immediately cease all advertising, and all other steps of non judicial foreclosure for the reasons presented herein.

C. An order directing tender of all future payments to the appropriate registry of court to continue Plaintiff in possession of the subject premises, pending the course of this litigation; and

D. A trial by jury where the agreement controlling the residential real estate can be judged on its merits to ascertain and define the property rights possessed in Plaintiff, and

E. Such other and further relief as the court shall deem appropriate.

This 03rd day of October 2019.

Respectfully submitted,

_____

Richard Carruthers, Pro se

23 Stillwater Trace
Griffin, GA, 30223
(404) 449-8608 PHONE
(800) 385-0656 FAX

# LIST OF EXHIBITS

| EXHIBIT # | Reference | | PAGE # |
|---|---|---|---|
| 1. Security Deed | p.2 | E | 1--13 |
| 2. Email notices of faulty tax payment | p.4 | | 14--16 |
| 3. 2017 L7 exemption and Tax Appeal | p.7 | | 17—19 |
| 4. No taxes due-Spalding Tax Commissioner | p.8 | | 20 |
| 5. Tax appeal status-Clerk Superior Court | p.8 | | 21 |
| 6. VA NOTICE—11. Escrow for Taxes and Ins. | p.9 | | 22 |
| 7. CFPB Complaint & Response Letter | p.13 | | 23-25 |
| 8. Albertelli emails | p.13 | | |
|    June 21--# 4 and #5 above supplied | | | 26--27 |
|    July 03, 2019 | | | 28--30 |
|    July 10, 2019 | | | 31--32 |
|    July 22, 2019—Specific request to tender | | | 33--34 |
| 9. FDCPA Letter –May 28, 2019 | | | 35--36 |
| 10. Notice of Foreclosure – September 26, 2019 | p.4 | | 37==40 |

# **VERIFICATION**

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.

SUBSCRIBED AND SWORN this date: ___10-4-19___

My commission expires: 9-27-2022      Notary Public/Clerk of Court

=========================================================
Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

After Recording Return To:
IMPAC MORTGAGE CORPORATION ATTN: FINAL DOC DEPT
19500 JAMBOREE ROAD
IRVINE, CALIFORNIA 92612
Loan Number: 6100191408
Case Number: 16-16-6-1087801

——————————————— [Space Above This Line For Recording Data] ———————————————

## SECURITY DEED

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**MIN:** 100859761001914081        **MERS Phone: 888-679-6377**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated   NOVEMBER 23, 2016   , together with all Riders to this document.
**(B)** **"Borrower"** is CRISTI CARRUTHERS AND RICHARD CARRUTHERS, AS JOINT TENANTS WITH RIGHTS OF SURVIVORSHIP


Borrower is the grantor under this Security Instrument.
**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

---

GEORGIA - Single Family - UNIFORM INSTRUMENT      Page 1 of 13      *DocMagic eForms*
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS      *www.docmagic.com*
(Rev. 1/01)



**(D)   "Lender"** is     IMPAC MORTGAGE CORP. DBA CASHCALL MORTGAGE

Lender is a      CALIFORNIA CORPORATION                                        organized
and existing under the laws of      CALIFORNIA
Lender's address is    ONE CITY BLVD., WEST, SUITE 200, ORANGE, CALIFORNIA
92868

**(E)   "Note"** means the promissory note signed by Borrower and dated     NOVEMBER 23, 2016
The Note states that Borrower owes Lender     FOUR HUNDRED THIRTY THOUSAND AND
00/100                                      Dollars (U.S. $   430,000.00            )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than    DECEMBER 1, 2046

**(F)   "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)   "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

**(H)   "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] VA Assumption Policy Rider, Acknowledgment Waiver Rider |

**(I)   "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

**(J)   "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

**(K)   "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

**(L)   "Escrow Items"** means those items that are described in Section 3.

**(M)   "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)   "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)   "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)   "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                              Page 2 of 13                    *DocMagic eForms*
www.docmagic.com

2

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | Spalding |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

See Legal Description Attached
A.P.N.: 080 02065

which currently has the address of

23 Stillwater Trace
[Street]

Griffin , Georgia 30223 ("Property Address"):
[City]                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,

---

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 3 of 13

*DocMagic eForms*
*www.docmagic.com*

3

Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 4 of 13

*DocMagic* **eForms**
www.docmagic.com

4



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount

---

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 5 of 13

*DocMagic* eⅰⅼᎥ✗Ꭵ✗ⅈ
www.docmagic.com

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 6 of 13

DocMagic *eForms*
www.docmagic.com



to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Assignment of Miscellaneous Proceeds; Forfeiture.**   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount

---

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 7 of 13

**DocMagic EForms**
www.docmagic.com

of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)
Page 8 of 13
*DocMagic eForms*
www.docmagic.com

as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**17.  Transfer of the Property; Acceleration; Assumption.  This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code. The acceptability of any assumption shall also be subject to the following additional provisions:**

**(a)  Funding Fee:  A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs.  If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable.  This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).**

**(b)  Processing Charge:  Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established**

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 9 of 13                    DocMagic *eForms*
www.docmagic.com

9

by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

    (c)    **Indemnity Liability Assumption:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

    If the acceptability of the assumption of this loan is not established for any reason, and Lender exercises its option to declare all sums secured by this Security Instrument immediately due and payable, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

    **19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)
    Page 10 of 13
    *DocMagic* **eForms**
www.docmagic.com

*10*

to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 11 of 13

DocMagic *eForms*
www.docmagic.com

be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**24. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**25. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

GEORGIA - Single Family - UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)

Page 12 of 13

*DocMagic eForms*
www.docmagic.com

12

## NOTICE TO BORROWER

Department of Veterans Affairs regulations at 38 C.F.R. 36.4337 provide as follows:

"Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto."

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ (Seal)
Cristi Carruthers                        -Borrower

_____ (Seal)
Richard Carruthers                       -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____

Notary Public, _Spalding_____ County


Loan Originator: Michael Tipton, NMLSR ID 270121
Loan Originator Organization: Impac Mortgage Corp. dba CashCall Mortgage, NMLSR ID 128231

| | | |
|---|---|---|
| GEORGIA - Single Family - UNIFORM INSTRUMENT<br>MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS<br>(Rev. 1/01) | Page 13 of 13 | DocMagic eForms<br>www.docmagic.com |

13

Cristi Carruthers
3595 Canton Road
Suite A9-180
Marietta, GA 30066
January 8, 2019


LoanCare, LLC
ATTN: Mortgage Resolution
P.O. Box 8068
Virginia Beach, VA 23450


Dear LoanCare, LLC :

NOTICE was hereby served upon you, LOANCARE, LLC, mortgage servicer for IMPAC
Mortgage Corp. dba CashCall Mortgage on October 16, 2018, that you erroneously disbursed
$4,954.38 on October 15, 2018 for County Taxes from the escrow account of loan number:
**0024535833**. This NOTICE was given verbally to LOANCARE, LLC Supervisor: Candice Jones
Department: Customer Service on October 16, 2018 at approximately 9:15 AM EST following
email notification of the above-mentioned erroneous disbursement. NOTICE was also given in
writing as an Escrow Inquiry, Tax Inquiry and Refund Request submitted via My LoanCare
Support Portal and receipt of the same acknowledged via email as reference/ticket number
LTK121420169620303X, LTK121420169620298X, and LTK121420169620307X respectively.

LOANCARE, LLC was advised and requested to immediately stop payment and recall the
erroneous draft in the amount of $4954.38 and deposit the same back into the escrow account of
loan number: **0024535833**. LOANCARE, LLC was further advised that an APPEAL OF
ASSESSMENT FOR DIGEST YEAR 2018 was filed timely on June 25, 2018 with the Board of
Equalization (BOE) for property id 080 02065, account number 9196 with appeal to the Superior
Court of Spalding County.  No adjudication has been found to date. The tax EXEMPT status for
Spalding County property id 080 02065, account number 9196 AND LOANCARE, LLC
Servicing account no. **0024535833** REMAINS unchanged. No past due mortgage is due. Apply
the $2247.47 suspensed on December 31, 2018 to the principal, interest and insurance escrow of
loan number: **0024535833** and correct any adverse reporting of the same.

Respectfully,



Cristi Carruthers
Homeowner

Enclosures

14

3595 Canton Road
Suite A9-180
Marietta, GA 30066
Phone (678) 855-5209
Fax (800) 385-0656
cncarruthers@gmail.com

February 12, 2019

LoanCare, LLC
ATTN: Mortgage Resolution
P.O. Box 8068
Virginia Beach, VA 23450


Dear LoanCare, LLC :


Pursuant to RESPA Sections 6 and 10 take NOTICE of this communication and treat it as a "qualified written request" which is hereby served upon you, Lakeview Loan Servicing, LLC, subservicing by LOANCARE, LLC, mortgage servicer for IMPAC Mortgage Corp. dba CashCall Mortgage. You have erroneously disbursed $4,954.38 on 10/15/2018 and $4,803.76 on 02/11/2019 for County Taxes from the escrow account of the mortgagor referenced loan: **0024535833**. You have been notified that the tax bill and treatment of tax account on the mortgaged property was timely disputed and remains disputed pending imminent judicial action. You are prohibited by law from reporting **any** adverse credit information on this account pursuant to the dispute noticed to you.

NOTICE was also given in writing as an Escrow Inquiry, Tax Inquiry and Refund Request submitted via My LoanCare Support Portal and receipt of the same acknowledged via email as reference/ticket number LTK121420169620303X, LTK121420169620298X, and LTK121420169620307X on October 16, 2018 respectively and LTK121420170943693X, LTK121420170943695X, and LTK121420170943697X on February 12, 2019 respectively.

Lakeview Loan Servicing, LLC, subservicing by LOANCARE, LLC, mortgage servicer for IMPAC Mortgage Corp. dba CashCall Mortgage was advised on 10/16/2018 and requested to immediately stop payment and recall the erroneous draft in the amount of $4,954.38 and now Lakeview Loan Servicing, LLC, subservicing by LOANCARE, LLC, mortgage servicer for IMPAC Mortgage Corp. dba CashCall Mortgage is being advised and requested once again to immediately stop payment and recall the erroneous draft in the amount of $4,803.76 and deposit the same back into the escrow account on the above referenced loan: **0024535833**. Lakeview Loan

15

LoanCare, LLC
February 12, 2019
Page 2

Servicing, LLC, subservicing by LOANCARE, LLC, mortgage servicer for IMPAC Mortgage Corp. dba CashCall Mortgage is further advised that an APPEAL OF ASSESSMENT FOR DIGEST YEAR 2018 was filed timely on June 25, 2018 with the Board of Equalization (BOE) for property id 080 02065, account number 9196 with appeal to the Superior Court of Spalding County. No adjudication has been found to date. The tax-EXEMPT status for Spalding County property id 080 02065, account number 9196 AND Lakeview Loan Servicing, LLC, subservicing by LOANCARE, LLC, mortgage servicer for IMPAC Mortgage Corp. dba CashCall Mortgage account no. **0024535833** REMAINS unchanged. No past due mortgage or escrow is due. Apply the $2247.47 received and suspensed on December 31, 2018 and again on January 30, 2019 to the principal, interest and insurance escrow of loan number: **0024535833** and correct any/all adverse reporting of the same.

Respectfully,


Cristi Carruthers
Mortgagor/Homeowner
Enclosures

16

**SPALDING**
## Receipt for Application of Homestead/Tax Return
Tax Year - 2017

Keep

Map Reference: 080 02065

Owner Name: CARRUTHERS CHRISTI AND RICHARD

Property Address:                    23 STILLWATER TRACE

GRIFFIN, GA  30224

/Exemption/

Date Application Received
3/7/2017 15:24:11

2017

## APPEAL OF ASSESSMENT FOR DIGEST YEAR :

Appeal No: _____

| Name | CARRUTHERS, CRISTI & RICHARD | | | Home Phone | 678 855-5209 |
|------|------------------------------|--|--|------------|--------------|
| Address | 23 STILLWATER TRACE | | | Work Phone | 404 449-8608 |
| Address | | | | Email Address | RICHCLICK@GMAIL.COM |
| City | GRIFFIN | State GA | Zip 30223-7174 | | |

### Property / Appeal Type (Check One)

[✓] Real    [ ] Personal    [ ] Motor Vehicle    [ ] Manufactured Home

| Property ID Number | 080 02065 | - | Account Number | 9196 |
|---|---|---|---|---|
| Property Description | LT 7STILLWATR TRC S/D PB16/188 &20/534 2.6AC | | | |

**Specify Grounds for Appeal:**

| Check all that apply | |
|---|---|
| Value | [X] |
| Uniformity | [ ] |
| Taxability | [ ] |
| Exemption Denied | [X] |
| Breach of Covenant | [ ] |
| Denial of Covenant | [ ] |

**You must select only one of the following options:**

[✓] BOE: appeal to the county board of equalization with appeal to the superior court (any / all grounds)

* [ ] ARBITRATION: to arbitration with an appeal to the superior court (valuation is only grounds that may be appealed to arbitration)

[ ] HEARING OFFICER: for (1) nonhomestead real property (and contiguous real property) or (2) wireless personal property account(s) with a FMV in excess of $750,000, to a hearing officer with appeal to superior court (value and uniformity only)

* [ ] SC: Directly to Superior Court (requires consent of BOA) (any / all grounds)

**Owner's value assertion (required)** 435,000

* Additional Cost / Fees May apply

**Property Owner Comments** FAILURE TO AUTOMATICALLY APPLY PRIOR YEAR GRANTED L7 EXEMPTION

RECEIVED

**Property Class** [✓] Residential [ ] Commercial [ ] Industrial [ ] Agricultural [ ] Other JUN ...

**Signature of Property Owner or Agent**    JUNE 25, 2018    SPALDING COUNTY BOARD OF ASSESSOR

Date

NOTE: If the appeal form is signed by an agent, a letter of authorization must accompany the filing of the appeal.

| Agent's Address: | N/A | Agent's Phone # | N/A |
|---|---|---|---|
| | | Agent's Email Address: | N/A |

NOTE: Filing of this document will create a review of the county's assessment. Reasonable notice is herein provided that an onsite inspection of the subject property by a member of the county appraisal staff may be performed.

| Assessors Use Only | | Previous Year Value | Taxpayer's Returned Value | Current Year Value |
|---|---|---|---|---|
| | 100% | | | |
| | 40% | | | |

| Date Received: | 6/25/18 | Received By: | |
|---|---|---|---|

18

RECEIVED

JUN 2 4 2019

SPALDING COUNTY
BOARD OF ASSESSORS

## APPEAL OF ASSESSMENT FOR DIGEST YEAR : 2019

Appeal No:

| Name | CARRUTHERS, CRISTI & RICHARD | | | | Home Phone | 678-855-5209 |
|---|---|---|---|---|---|---|
| Address | 23 STILLWATER TRACE | | | | Work Phone | 404-449-8608 |
| Address | | | | | Email Address | CNCARRUTHERS@GMAIL.COM |
| City | GRIFFIN | State | GA | Zip | 30223 | |

Property / Appeal Type (Check One)

[✓] Real     [ ] Personal     [ ] Motor Vehicle     [ ] Manufactured Home

| Property ID Number | 080 02065 | Account Number | 9196 |
|---|---|---|---|
| Property Description | LT 7STILLWATR TRC S/D PB16/188 & 20/534 2.6AC | | |

### Specify Grounds for Appeal:

*Check all that apply*

| Value | [✓] |
|---|---|
| Uniformity | [ ] |
| Taxability | [ ] |
| Exemption Denied | [✓] |
| Breach of Covenant | [ ] |
| Denial of Covenant | [ ] |

### You must select only one of the following options:

[✓] BOE:appeal to the county board of equalization with appeal to the superior court (any / all grounds)

[ ] ARBITRATION: to arbitration without an appeal to the superior court (valuation is only grounds that may be appealed to arbitration)

[ ] HEARING OFFICER: for a parcel of nonhomestead property with a FMV in excess of $1 million, to a hearing officer with appeal to superior court (value and uniformity only)

[ ] SC: Directly to Superior Court (requires consent of BOA) (any / all grounds)

Property Owner Comments:   FAILURE TO AUTOMATICALLY APPLY PRIOR YEAR 2017 GRANTED L7 EXEPTION.

APPEAL OF 2018 PROPERTY TAX STATEMENT ADJUSTED BILL PRINTED 02/11/2019

APPEAL OF 2019 ANNUAL ASSESSMENT NOTICE DATE 05/17/2019

Property Class   [✓] Residential   [ ] Commercial   [ ] Industrial   [ ] Agricultural

$435,000

Signature of Property Owner or Agent                    Owner/Agent Declared Value

Agent's Address: _____   Agent's Phone #: _____

_____   Agent's Email Address: _____

| Assessors Use Only | | Previous Year Value | Taxpayer's Return Value | Current Year Value |
|---|---|---|---|---|
| | 100% | | | |
| | 40% | | | |

Date Received:  6-24-19        Received by:  Eva Morales.

PRINT

/9

# Spalding

## Sylvia W. Hollums
**P O Box 509**
**Griffin, Ga. 30224**

Tax Office: 770-467-4360
Tag Office: 770-467-4380
Fax: 770-467-4368
E-mail Tags: tags@spaldingcounty.com
E-mail: shollums@spaldingcounty.com

June 10, 2019

Re:        Property Taxes; Map # 080 02065; 23 Stillwater Trace;
           Owners: Cristi and Richard Carruthers

To Whom it May Concern:

Please be advised that the above referenced property is under appeal for the years 2018 and 2019 with no date set for the hearing in Superior Court of Spalding County. There will be no taxes due until the case is resolved.

If you need further verification, please contact this office at 770-467-4373.

Sincerely,

*Sylvia W. Hollums*

Sylvia W. Hollums,
Tax Commissioner

# Spalding County Superior Court
## Debbie L. Brooks, Clerk
### 132 E. Solomon St.
### Griffin, Ga. 30224
### Phone: 770-467-4309

June 7, 2019

To Whom It May Concern,

I'm writing in reference to the tax appeal for Richard & Cristi Carruthers for 23 Stillwater Trace, Griffin, Ga 30223. Currently the year 2018 and 2019 are under appeal with no future court date scheduled at this time.

If you have any further concerns, please do not hesitate to contact me.

Sincerely,
Debbie L. Brooks
Clerk, Spalding County Superior Court

# 11.  Escrow for Taxes and Insurance

| | |
|---|---|
| **Change Date** | September 15, 2004, Change 4<br>This section has been changed to create subsection lettering. |

**a.<br>Requirements**

VA does not require the lender to establish escrow accounts for the collection and payment of property taxes, hazard insurance premiums, and similar items. However, it is the lender's responsibility to ensure that these items are paid timely.

A lender who chooses to escrow for taxes and insurance must comply with applicable laws, including the Real Estate Settlement Procedures Act (RESPA).

CFPB Complaint & Response

August 23, 2019 REPLY to Loan Care Servicing CFPB Complaint

Loan Care Servicing is unable to provide documentary support that it was contacted by the taxing authority claiming taxes were due on the subject property. Even if Loan Care Servicing observed a website reporting taxes due, it had (has) the duty to confirm that information with the taxing authority, and with the property owner/borrower. Loan Care Servicing did not meet its duty. Further, Loan Care Servicing was given specific written communication by the borrower that the taxes were not due, yet it created a loan escrow shortfall which it attempts to impose against the borrower, illegally. Loan Care Servicing has also received the official tax status letter issued by the tax authority informing all parties that no taxes are currently due as a result of the timely tax appeal, which remains on-going. Loan Care Servicing has heavy handedly decided to ignore the information supplied by the borrower and created a problem where there was no problem. Now Loan Care Servicing refuses to receive and apply regular mortgage payments to the account sans addressing the escrow shortage that --it-- created by its errors. We implore the CFPB to take what action it can to correct Loan Care Servicing in this matter, and in its general practices conducted in the State of Georgia and with veterans throughout the United States.

We want Loan Care Servicing to accept our payments and apply them to our balances as follows:

Principal; Interest, and Insurance---no portion to real estate taxes, which are in abeyance during appeal.

We want Loan Care Servicing to remove any late fees, or other charges that would reduce credit of our payments to any charge other than credit to:

Principal; Interest, and Insurance---no portion to real estate taxes, which are in abeyance during appeal.

We will settle any real estate tax due in accord with the outcome of our appeal.

We want all foreclosure actions stopped upon our payment of any arrearage of:

Principal; Interest, and Insurance---no portion to real estate taxes, which are in abeyance during appeal.

We want Loan Care to correct the reporting of the mortgage reports to all bureaus to paid on time status as a settlement of this dispute.

23

# LOANCARE
### A SERVICELINK COMPANY

3637 Sentara Way | Virginia Beach, VA 23452

August 23, 2019

Richard and Christi Carruthers
23 Stillwater Trace
Griffin, Georgia 30223

Re: Loan No. XXXXXX5833

Dear Mr. and Mrs. Carruthers:

We at LoanCare, the sub-servicer of your mortgage loan, appreciate the opportunity to address your concerns submitted to the Consumer Financial Protection Bureau (CFPB) and Michael O'Conner July 22, 2019. We are committed to providing exceptional service and seek to resolve your concerns accordingly. The purpose of this letter is to provide you with a response as to the issues raised in your complaint.

As a sub-servicer, LoanCare performs a variety of tasks on the servicer's behalf, including, but not limited to, collecting payments, remitting property taxes and home owners insurance, as well as preparing and providing billing and year-end statements.

On or about October 17, 2018, LoanCare was advised by the county tax assessor's office, taxes for 2018 were not exempt and needed to be paid. LoanCare had paid them in the amount of $4954.38. On or about January 16, 2019, LoanCare became aware through the county assessors Website the taxes due October 2018 were not reflecting paid and in fact were delinquent. On or about February 12, 2019, we were advised by the tax commissioner your exemption status had changed and our payment sent October 15, 2018 was being held as your taxes now had increased to $9758.12. LoanCare issued another payment in the amount of $4803.76.

This was the last disbursement made towards your property taxes. Please be advised, as the sub-servicer we must adhere to the investor's guidelines. If we are notified taxes are due, we will pay them. Unfortunately, at this time we are unable to remove the escrow requirement for this loan regarding your property taxes.

™ & © ServiceLink IP Holding Company, LLC
and/or an affiliate. All rights reserved.

loancareservicing.com | 800.274.6600

Our records indicate your loan is in default and we are reporting this information accurately to the following credit reporting agencies:

Trans Union
Experian
Equifax

If you have any further questions or concerns related to our explanation of your case, please do not hesitate to contact me in the Office of the Customer, Monday through Friday from 8:00a.m. to 5:00p.m., Eastern Standard Time at (800) 919-5631 extension 5248.

Sincerely,

Julie L. Burris
Office of the Customer

™ & ® ServiceLink IP Holding Company, LLC,
and/or an affiliate. All rights reserved

 Gmail

Richard Carruthers <carruthers.r@gmail.com>

---

## Carruthers --Loan Care Account # 0024535833--23 Stillwater Trace, Griffin, GA 30223

**Richard Carruthers <carruthers.r@gmail.com>**                                           Fri, Jun 21, 2019 at 10:20 AM
To: michael.oconnor@loancare.net
Cc: csims@alaw.net, C Carruthers <cncarruthers@gmail.com>

June 21, 2019

Michael O'Connor

SVP/General Counsel

Legal Department

LoanCare, LLC.

O: 757-452-5166

E: michael.oconnor@loancare.net.


Cory Sims, Esquire

Albertelli Law

100 Galleria Parkway

Suite 960

Atlanta, GA 30339

O: 770 373-4242

E: corysims@alaw.net


Notice of Dispute of Debt Claim made by Loan Care on Loan Number 0024535833


Mr. Michael O'Connor and Mr Cory Sims:

Mr. O'Connor, on June 07, 2019 we made initial contact with your office by phone. On June 10, 2019 we apprised you of the problem we are experiencing with Loan Care by phone and in writing in the below forwarded message. In the phone portion of the communication, you indicated that your legal team would receive the assignment to follow up our concerns and that we could expect responsive communications on the matter within days.

Several days have elapsed since our June 10, 2019 communication to you, without any follow-up from anyone at Loan Care. A letter from outside counsel--Albertelli Law, Atlanta, GA, dated May 28, 2019 crossed the time of our communication and was received subsequent to our communication with you. Are we to take the silence of Loan Care as indication that Albertelli Law now speaks as the one voice of Loan Care in this matter?

any-- charges of any kind associated with an escrow balance, nor any additional fees or costs of any kind resultant from the tortious behavior of Loan Care complained of in dozens of oral and written communications to the Loan Care employees, and now to the two of you. We stand ready to pay any just debt we owe, and insist that our payments be properly credited to our account, but we will not indemnify Loan Care for its unprofessional and illegal conduct in this matter.

Please advise.

/s/ Richard Carruthers
404 449-8608
[Quoted text hidden]

—

Regards,
    /s/
Richard Carruthers

---

**2 attachments**

📄 **Spalding County Superior Court Tax Appeal Status--23 Stillwater.pdf**
   76K                                                        (EXHIBIT 5, p. 21)

📄 **Tax Commissioner Letter for 23 Stillwater Trace - Cristi Carruthers 06102019.pdf**
   367K
                                                        (EXHIBIT 4, p. 20)

M Gmail                                        Richard Carruthers <carruthers.r@gmail.com>

---

## July 03, 2019-- Carruthers --Loan Care Account # 0024535833--23 Stillwater Trace, Griffin, GA 30223

---

**Richard Carruthers** <carruthers.r@gmail.com>                    Wed, Jul 3, 2019 at 10:28 AM
To: dweit@alaw.net, lcoe@alaw.net, Cory Sims <csims@alaw.net>, michael.oconnor@loancare.net
Cc: C Carruthers <cncarruthers@gmail.com>


July 03, 2019

Michael O'Connor

SVP/General Counsel

Legal Department

LoanCare, LLC.

O: 757-452-5166

E: michael.oconnor@loancare.net.


Cory Sims, Esquire

Danielle Weit

Lisa Coe

Albertelli Law

100 Galleria Parkway

Suite 960

Atlanta, GA 30339

O: 770 373-4242

E: corysims@alaw.net


Additional FDCPA Violations re Carruthers Dispute of Debt claimed by Loan Care on Loan Number 0024535833, property location 23 Stillwater Trace, Griffin, GA 30223



Mr. Michael O'Connor, Mr Cory Sims, Danielle Weit, and Lisa Coe:

firms have committed against the borrower, against the property owners, and against the property, we notify you of physical trespass by your agent(s) upon our property. On prior occasions, and on today, July 03, 2019, individuals in your employ, possessing information adverse to our reputational standing in the neighborhood, and the larger community made contact in violation of the law.

We advise you of this violation per the FDCPA. It is a violation to enter a property marked private property without being invited by the owners of that property. 23 Stillwater Trace is prominently, so marked. It is a violation of the borrower's rights to make unwanted contact. **We notice you to CEASE and DESIST from all contacts at the property by any physical means**. Email and US Postal Mail are both completely adequate. Take notice that we work from this location and it is an additional prohibited act to physically contact us at our place of employment.

The totality of our communications serve well to inform you early, constantly, and repeatedly of the error of your actions, and the folly of your persistence in this tortious pattern of conduct. Ladies and gentlemen, please again take notice, of the multiple continuing and egregious violations that your firms continue to perpetrate against the property and owners above referenced. Without attempting an exhaustive list of the violations of which we complain, here is a --partial-- list:

1 Failure of Disclosure of Purpose.
2. Failure of Disclosure of Identity
3. Violation of the Obligation to Respect Debtor's Privacy
4. Slander of title
5. Failure to verify disputed debt
6. Failure to identify the original creditor
7. Violation of Obligation of debt collection agency to report dispute to credit reporting agency
8. Advertising existence of debt
9. Harassment
10. Violation of Honesty and Fair Dealing

We stand ready to pay any just debt we owe, and insist that our payments be properly credited to our account,  but we will not indemnify Loan Care for its unprofessional and illegal conduct in this matter. We also insist that you do not pursue needless collection behaviors that incur charges that you mistakenly believe that you can pass on to us. It is bad faith and a violation of your duty of fair and honest dealing to conduct yourselves otherwise.

Please advise.

/s/ Richard Carruthers
404 449-8608



Stillwater-July 03–Mailbox long–20190703_100754.jpg
208K



Stillwater July 03-20190703_100130.jpg
93K



Stillwater-July 03 Mailbox-20190703_100830.jpg
181K



Stillwater-July 03 Other drive close --20190703_100610.jpg
233K



Stillwater July 03- 20190703_100144.jpg
131K



Stillwater-July 03-Mailbox side-20190703_100806.jpg
240K

ffc18df9826f0c727e58ad9d552fba50 (1).mp4
724K

M Gmail                                                             Richard Carruthers <carruthers.r@gmail.com>

**July 03, 2019-- Carruthers --Loan Care Account # 0024535833--23 Stillwater Trace, Griffin, GA 30223**

Richard Carruthers <carruthers.r@gmail.com>                              Wed, Jul 10, 2019 at 4:32 PM
To: C Carruthers <cncarruthers@gmail.com>

———— Forwarded message ————
From: **Richard Carruthers** <carruthers.r@gmail.com>
Date: Wed, Jul 10, 2019 at 4:32 PM
Subject: Re: July 03, 2019– Carruthers –Loan Care Account # 0024535833–23 Stillwater Trace, Griffin, GA 30223
To: Cory Sims <csims@alaw.net>
Cc: Danielle Weit <dweit@alaw.net>, Lisa Coe <lcoe@albertellilaw.com>, C Carruthers <cncarruthers@gmail.com>

July 10, 2019

Michael O'Connor

SVP/General Counsel

Legal Department

LoanCare, LLC.

O: 757-452-5166

E: michael.oconnor@loancare.net.


Cory Sims, Esquire

Danielle Weit

Lisa Coe

Albertelli Law

100 Galleria Parkway

Suite 960

Atlanta, GA 30339

O: 770 373-4242

E: corysims@alaw.net


Ladies and Gentlemen:

Thank you for the update. Also, Mr. Sims, have you made update to the borrower's credit file with all credit
bureaus of the dispute and sale cancellation? Notice that it is a fair conclusion that the information of the debt
on this property is in the hands of outside parties, or else why would parties asking that we call our mortgage
company make physical visit to the premises of 23 Stillwater Trace, Griffin, GA?

Please advise.

On Wed, Jul 10, 2019 at 3:39 PM Cory Sims <csims@alaw.net> wrote:

    Mr. Carruthers,

    I wanted to reach out to you and let you know that the August sale has been cancelled.

As for the attachments, I am not sure who appeared at your property, but they were not sent by this firm or our client in the matter. The Card attached does not appear to ring to LoanCare, the current servicer. I am in the process of obtaining all the documents to give you a formal response to your debt dispute, but I wanted to reach out and let you know the two pieces of information above.

Thank you,



**Cory Sims | Managing Attorney, Georgia Default**
100 Galleria Parkway, Suite 960, Atlanta, GA 30339
E: Csims@alaw.net | O: (770) 373-4242 ext: 2476 | F: (770) 373-4260

**ALABAMA • ARKANSAS • FLORIDA • GEORGIA**

**NORTH CAROLINA • SOUTH CAROLINA**

**TENNESSEE • TEXAS • US VIRGIN ISLANDS**

This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this e-mail in error or are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately via e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is STRICTLY PROHIBITED. Albertelli Law accepts no liability for the content of this e-mail, or for the consequences of any actions taken on the basis of the information provided. WARNING: Although Albertelli Law has taken reasonable precautions to ensure no viruses are present, computer viruses can be transmitted via e-mail. The company cannot accept responsibility for any loss or damage arising from the use of this e-mail or attachments. The recipient should check this e-mail and any attachments for the presence of viruses. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. THIS LAW FIRM MAY BE DEEMED A "DEBT COLLECTOR" UNDER THE FAIR DEBT COLLECTION PRACTICES ACT. ANY AND ALL INFORMATION OBTAINED MAY BE USED FOR THE PURPOSE OF COLLECTING A DEBT. If you are currently pursuing loss mitigation with the creditor or a debtor in bankruptcy or have been discharged in bankruptcy, or are otherwise protected by a bankruptcy stay, this is NOT an attempt to collect a debt and is for informational purposes only. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.

**From:** Richard Carruthers [mailto:carruthers.r@gmail.com]
**Sent:** Wednesday, July 3, 2019 10:29 AM
**To:** Danielle Weit <dweit@alaw.net>; Lisa Coe <lcoe@albertellilaw.com>; Cory Sims <csims@alaw.net>; michael.oconnor@loancare.net
**Cc:** C Carruthers <cncarruthers@gmail.com>
**Subject:** July 03, 2019-- Carruthers --Loan Care Account # 0024535833--23 Stillwater Trace, Griffin, GA 30223

July 03, 2019

Michael O'Connor

SVP/General Counsel

Legal Department

LoanCare, LLC.

O: 757-452-5166

E: michael.oconnor@loancare.net.

Cory Sims, Esquire

Danielle Weit

Lisa Coe

Albertelli Law

100 Galleria Parkway

 Gmail

Richard Carruthers <richclick@gmail.com>

---

## Mortgage payments on 23 Stillwater Trace, Griffin, GA

---

Richard Carruthers <richclick@gmail.com>
To: corysims@alaw.net, michael.oconnor@loancare.net
Cc: C Carruthers <cncarruthers@gmail.com>

Mon, Jul 22, 2019 at 3:27 PM

 July 22, 2019

Cory Sims, Esquire

Albertelli Law

100 Galleria Parkway

Suite 960

Atlanta, GA 30339

O: 770 373-4242

E: corysims@alaw.net


Michael O'Connor

SVP/General Counsel

Legal Department

LoanCare, LLC.

O: 757-452-5166

E: michael.oconnor@loancare.net.


Re: Loan Number 0024535833


Gentlemen:


Several days have elapsed without further communication re your willingness to resolve our dispute. To be clear, **we wish to make our mortgage payments** without contribution to the escrow account for any provision for real estate taxes, as we dispute that any real estate taxes are owed. We seek to have as normal a relationship as the circumstances permit. We insist that the credit reports of the borrower reflect that all payments have been made on time, and that any derogatory information be excised from the record of all credit bureaus as error.


We will begin making the payments of $ 2247.47 monthly with the payments credited to PI(T)I. We will tender the arrear payments on the same basis, sans any late fees or other charges, which will be waived, not deferred. We are prepared to act in short order to return the account to normalcy. What is your position on this matter?

Regards,
    /s/
Richard Carruthers

404 449-8608  OFFICE

800 385-0656  FAX



100 Galleria Parkway, Suite 960, Atlanta, GA 30339
Phone: 770.373.4242 I Fax: 770.373.4260 I alaw.net

May 28, 2019

| | |
|---|---|
| Principal Balance: | $412,497.66 |
| Interest through date above: | $6,923.46 |
| Escrow Advances: | $7,389.99 |
| Corporate Advances: | $422.88 |
| Outstanding Attorney's Fees & Costs: | $397.50 |
| Total Claim: | $427,631.49 |

Cristi Carruthers
3595 Canton Road
Marietta, GA 30066

RE: Property: 23 Stillwater Trace, Griffin, GA 30223
Loan Number: 0024535833
Albertelli File Number: 19-014940

Dear Sir/Madam:

Albertelli Law represents LoanCare Servicing Center, Inc., the creditor and servicer of a loan related to the property at 23 Stillwater Trace, Griffin, GA 30223 and this communication is governed by the Fair Debt Collection Practices Act "FDCPA", 15 USCS §§ 1692 et seq. As of today's date, our records indicate that based upon the terms of the Promissory Note and Mortgage associated with this loan, you owe the Total Claim amount listed above. An itemization of the unpaid balance, unliquidated damages and other contractual costs are provided above. Also, the terms of the Promissory Note and Mortgage also entitle the creditor to recover attorney's fees and costs which is the Outstanding Attorney's Fees & Costs listed above. Per the FDCPA:

IF, WITHIN THIRTY (30) DAYS AFTER YOU RECEIVE THIS NOTICE, YOU NOTIFY US, AS STATED ABOVE, THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED AND/OR THAT YOU REQUEST, VALIDATION AND/OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO CEASE OUR COLLECTION EFFORTS, EVEN IF WE HAVE ALREADY FILED THE LAWSUIT, UNTIL WE MAIL YOU INFORMATION VALIDATING THE DEBT AND/OR UNTIL WE PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

All correspondence with our firm should be directed to the following address: **Albertelli Law, 100 Galleria Parkway, Suite 960, Atlanta, GA 30339**

**IF YOU ARE CURRENTLY PURSUING LOSS MITIGATION WITH THE CREDITOR OR A DEBTOR IN BANKRUPTCY:**

Please be advised that if you are currently pursuing loss mitigation with the creditor, or a debtor in bankruptcy or have been discharged in bankruptcy, this letter is provided to you for informational purposes to notify you of our Firm's legal retention. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan. If you previously received a discharge in a bankruptcy case involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally. This law firm is

seeking solely to foreclose the creditor's lien on real estate and this law firm will not be seeking a personal money judgment against you.

Sincerely,
Albertelli Law

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



100 Galleria Parkway, Suite 960, Atlanta, GA 30339
Phone: 770.373.4242  I  Fax: 770.373.4260  I  alaw.net

September 26, 2019

Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223

**VIA U.S. MAIL**

Re:     NOTICE OF FORECLOSURE SALE
Note and Deed to Secure Debt held by: Lakeview Loan Servicing, LLC
Originally made by Cristi Carruthers and Richard Carruthers to Mortgage Electronic Registration Systems,
Inc., as nominee for Impac Mortgage Corp. dba Cashcall Mortgage
Original Principal Balance: $430,000.00
Secured by Debt to Secure Deed dated November 23, 2016
Deed Book 4119, Page 39
Spalding County, Georgia
Property Address: 23 Stillwater Trace, Griffin, GA 30223
Our File Number: 19-014940

Dear Richard Carruthers:

This law firm has been retained to start foreclosure proceedings against the referenced property immediately.  Enclosed is a copy of the Notice of Sale submitted to the publisher of the legal newspaper of the county where the property is located.  The foreclosure sale will be conducted on November 5, 2019, during the legal hours of sale (between 10:00 am and 4:00 pm) at the Spalding County Courthouse.

As a result of your default under the terms of the Security Deed, you are hereby notified the entire amount of the outstanding principal balance, interest, and other authorized charges of the loan, has been declared, and is now, immediately due and payable in full.  The Note executed in connection with the loan allows for the addition of attorney's fees to the debt in the event of collection by or through an attorney-at-law.  Pursuant to Official Code of Georgia, § 13-1-11 (GCA § 20-506), you are hereby afforded ten (10) days from your receipt of this letter to pay in full the debt owed without having to pay reasonable attorney fees.  After this ten (10) day period, all attorneys' fees allowed under applicable Georgia law may be added to the debt.

In the event the above referenced default is not cured and the property is sold at foreclosure to a party other than the creditor/holder, there could be money from the sale for distribution to the lien holders in the property and/or the former owner of record.  To determine whether our firm is in possession of any money for distribution to lien holders and/or the former owner of record, please call (770) 373-4242, or email gaforeclosure@albertellilaw.com no earlier than 35 days after the foreclosure sale date.

THIS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE

Lakeview Loan Servicing, LLC is the holder of the Security Deed to the above-referenced property.   The entity who has full authority to negotiate, amend, or modify the terms of the loan is LoanCare LLC.

To discuss possible alternatives to foreclosure, or if you desire to attempt to bring your loan current, please call LoanCare LLC at 800-274-6600.

Should you need additional information about this foreclosure, you may call (770) 373-4242.  Under certain circumstances and conditions, the lender may be able to allow you to reinstate the loan and stop the foreclosure.  Should you desire to reinstate the loan, please contact this office.  We will assist you in determining whether reinstatement is allowed, and if allowed, the amount of money which must be paid. All payments made through our office must be in the form of certified funds.

In the event you have received a discharge in bankruptcy, that discharge may have extinguished any personal liability you may have had for this loan. In such event, any action take would be limited to the foreclosure on the above referenced property and would not be an attempt to collect this debt personally.  If you are involved in an active bankruptcy case and no relief from the automatic stay has been obtained by your lender, please email your bankruptcy information immediately to gaforeclosure@albertellilaw.com.

BE GOVERNED ACCORDINGLY.

Sincerely,

Albertelli Law

wc - 19-014940

THIS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

**STATE OF GEORGIA**
**COUNTY OF SPALDING**

### NOTICE OF SALE UNDER POWER

Under and by virtue of the power of sale contained with that certain Security Deed dated November 23, 2016, from Cristi Carruthers and Richard Carruthers to Mortgage Electronic Registration Systems, Inc., as nominee for Impac Mortgage Corp. dba Cashcall Mortgage, recorded on December 12, 2016 in Deed Book 4119 at Page 39 Spalding County, Georgia records, having been last sold, assigned, transferred and conveyed to Lakeview Loan Servicing, LLC by Assignment and said Security Deed having been given to secure a note dated November 23, 2016, in the amount of $430,000.00, and said Note being in default, the undersigned will sell at public outcry during the legal hours of sale before the door of the courthouse of Spalding County, Georgia, on November 5, 2019 the following described real property (hereinafter referred to as the "Property"):

**ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING, AND BEING IN THE CITY OF GRIFFIN, AND IN LAND LOT 64 OF THE THIRD LAND DISTRICT OF ORIGINALLY HENRY, NOW SPALDING, COUNTY, GEORGIA, AND BEING MORE PARTICULARLY SHOWN AND DESIGNATED AS LOT 7, STILLWATER TRACE SUBDIVISION, CONTAINING 2.592 ACRES, ON A PLAT OF SURVEY ENTITLED SURVEY FOR J. STEVE CROUCH, DATED DECEMBER 9, 1991, PREPARED BY ROBERT S. MITCHELL, REGISTERED LAND SURVEYOR, A COPY OF WHICH PLAT IS RECORDED IN PLAT BOOK 21 PAGE 534, SPALDING COUNTY, GEORGIA RECORDS; SAID PLAT, TOGETHER WITH THE METES, BOUNDS, COURSES, AND DISTANCES AS SHOWN THEREON, IS INCORPORATED BY REFERENCE AND MADE A PART HEREOF AS IF FULLY SET OUT HEREIN. BEING KNOWN AS 23 STILLWATER TRACE ACCORDING TO THE PRESENT SYSTEM OF NUMBERING IN GRIFFIN COUNTY, GEORGIA.**

The debt secured by the Security Deed and evidenced by the Note and has been, and is hereby, declared due and payable because of, among other possible events of default, failure to make the payments as required by the terms of the Note. The debt remaining is in default and this sale will be made for the purposes of paying the Security Deed, accrued interest, and all expenses of the sale, including attorneys' fees. Notice of intention to collect attorneys' fees has been given as provided by law. To the best of the undersigned's knowledge, the person(s) in possession of the property is Cristi Carruthers, Richard Carruthers.

The property, being commonly known as **23 Stillwater Trace, Griffin, GA, 30223** in Spalding County, will be sold as the property of Cristi Carruthers, Richard Carruthers, subject to any outstanding ad valorem taxes (including taxes which are a lien and not yet due and payable), any matters affecting title to the property which would be disclosed by accurate survey and inspection thereof, and all assessments, liens, encumbrances, restrictions, covenants, and matters of record to the Security Deed.

Pursuant to O.C.G.A.§ 44-14-162.2, the name, address and telephone number of the individual or entity who shall have the full authority to negotiate, amend or modify all terms of the above described mortgage is as follows: LoanCare LLC, 3637 Sentara Way, Virginia Beach, VA 23452, 800-274-6600 . The foregoing notwithstanding, nothing in O.C.G.A. § 44-14-162.2 shall require the secured creditor to negotiate, amend or modify the terms of the mortgage instrument.

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under U.S. Bankruptcy code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed.

> Albertelli Law
> Attorney for Lakeview Loan Servicing, LLC as
> Attorney in Fact for Cristi Carruthers and
> Richard Carruthers
> 100 Galleria Parkway, Suite 960
> Atlanta, GA 30339
> Phone: (770) 373-4242

By: _____
      Cory Sims
      For the Firm

THIS FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

wc - 19-014940

96337

Civil Action No. 19 V – 989

Date Filed OCT. 04, 2019

Magistrate Court ☐
Superior Court ☑
State Court ☐
**Georgia, Gwinnett County**

PAID

RICHARD CARRUTHERS

**Plaintiff**

VS.

LAKEVIEW LOAN SERVICING, LLC

**Defendant**

Attorney's Address
23 STILLWATER TRACE *
GRIFFIN, GA 30223

Name and Address of party to be served.
CORPORATION SERVICE COMPANY
40 TECHNOLOGY PARKWAY SOUTH, SUITE 300
NORCROSS, GA 30092

**Garnishee**

HEARING DATE 10/21/19

**Sheriff's Entry Of Service**

| | |
|---|---|
| **Personal** ☐ | I have this day served the defendant _____ personally with a copy of the within action and summons. |
| **Notorious** ☐ | I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County. Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at the residence of defendant. |
| **Corporation** ☑ | Served the defendant Lakeview Loan Servicing a corporation by leaving a copy of the within action and summons with Alisha Surat in charge of the office and place of doing business of said Corporation in this County. |
| **Tack & Mail** ☐ | I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons. |
| **Non Est** ☐ | Diligent search made and defendant _____ not to be found in the jurisdiction of this Court. |

This 11 day of OCT , 20 19 .

J. Hall S01115
**Deputy**

Sheriff Docket_____ Page_____

**Gwinnett County, Georgia**

WHITE:  Clerk        CANARY:  Plaintiff / Attorney        PINK:  Defendant

SC-2 Rev.3.13

E-filed for Record
11/13/2019 12:36 PM
Superior/State Court, Spalding County

## IN THE SUPERIOR COURT OF SPALDING COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| RICHARD CARRUTHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 19V989 |
| v. | ) | |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC, | ) | |
| ASSIGNEE OF LOAN CARE SERVICING, INC., | ) | |
| VIA MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., AS | ) | |
| NOMINEE FOR IMPAC MORTGAGE CORP. | ) | |
| DBA CASHCALL MORTGAGE, | ) | |
| LOAN CARE SERVICING CENTER, INC., | ) | |
| D/B/A LOAN CARE, LOAN CARE, LLC, | ) | |
| D/B/A LOAN CARE, | ) | |
| JAMES E. ALBERTELLI, P.A., | ) | |
| D/B/A ALBERTELLI LAW AND ALAW, AND | ) | |
| UNKNOWN CONSPIRATORS, AFFILIATES, | ) | |
| AGENTS, AND JANE DOES AND | ) | |
| RICHARD ROES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROTECTIVE ANSWER OF DEFENDANT JAMES E. ALBERTELLI, P.A. D/B/A ALAW

COMES NOW Defendant James E. Albertelli, P.A. d/b/a Albertelli Law and ALAW ("ALAW") by and through the undersigned counsel, and hereby file this its Protective Answer respectively respectfully showing this Honorable Court as follows:

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

1

## SECOND DEFENSE

The Complaint is barred due to insufficiency of process and insufficiency of service of process as to Defendant ALAW.  Therefore, this court lacks jurisdiction over this Defendant.

## THIRD DEFENSE

Plaintiff has suffered no damages resulting from any conduct on part of Defendant.

## FOURTH DEFENSE

Plaintiff's damages, if any, were caused by Plaintiff's own acts or omissions.

## FIFTH DEFENSE

Plaintiff lacks standing to bring some or all of the claims asserted in the Complaint.

## SIXTH DEFENSE

Defendant reserves the right to amend this responsive pleading should additional defenses be discovered during the course of discovery in this matter.

## SPECIFIC RESPONSES

Defendant ALAW denies any allegations of "Tortious Interference by Defendant" as stated in Count I of Plaintiff's Complaint.

Defendant ALAW denies any allegations of "Breach of Contract by Defendant" as stated in Count II of Plaintiff's Complaint.

Defendant ALAW denies any allegations of "Violation of the Fair Debt Collection Practices Act "FDCPA" 15 USC 1692 et seq.  by Defendant" as stated in Count III of Plaintiff's Complaint.

Defendant ALAW denies any allegations of "Negligent Infliction of Emotional Distress" as stated in Count III of Plaintiff's Complaint.

2

Defendant ALAW denies any allegations of "Equity Striping Facilitated by FDCPA Violation" as stated in Count IV of Plaintiff's Complaint.

Defendant ALAW denies any allegations contained in "Theories Upon Which Plaintiff Expects to Prevail" as stated in Plaintiff's Complaint.

**WHEREFORE**, having fully responded to each and every allegation set forth in the Complaint, Defendant respectfully prays as follows:

a)  That this Court dismiss the Complaint;

b)  That this Court grant such other and further relief as it deems just and proper.

Submitted this 13th day of November, 2019.

By:   _/s/Cory P. Sims_

Cory P. Sims, Esquire
Georgia Bar No. 701802
JAMES E. ALBERTELLI, P.A.
D/B/A ALBERTELLI & WHITWORTH, P.A.
100 Galleria Parkway, Suite 960,
Atlanta, Georgia 30339,
Telephone: (770) 373-4242
Facsimile: (770) 373-4260
Email:  csims@alaw.net
Attorneys for Albertelli Law
File No.: 19-017420

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies a true and correct copy of the foregoing **Defendant Albertelli**

**Law's Answer** was served upon the following by mailing same by United States First Class Mail in

a properly addressed envelope with adequate postage affixed thereon to insure delivery, addressed as

follows:

Richard Carruthers
23 Stillwater Trace
Griffin, Georgia 30223

This 13th day of November, 2019.

By:    _/s/Cory P. Sims_
Cory P. Sims, Esquire
Georgia Bar No. 701802
JAMES E. ALBERTELLI, P.A.
D/B/A ALBERTELLI & WHITWORTH, P.A.
100 Galleria Parkway, Suite 960,
Atlanta, Georgia 30339,
Telephone: (770) 373-4242
Facsimile: (770) 373-4260
Email:  csims@alaw.net
Attorneys for Albertelli Law
File No.: 19-017420

**SHERIFF'S ENTRY OF SERVICE**

Marietta, Georgia        COBB COUNTY

Superior Court ☐        State Court ☐

KEEP

Attorney's Address

23 STILLWATER TRACE
GRIFFIN, GA 30223

Spalding Co

Civil Action No. 19V-989
Date Filed OCT. 04, 2019

Name and Address of Party to be Served

COREY SIMS, ESQUIRE
JAMES E. ALBERTELLI, P.A.
100 GALLERIA PARKWAY, STE. 960
ATLANTA, GA 30339

RICHARD CARRUTHERS
Plaintiff

VS.

ALBERTELLI LAW

_____

_____

Garnishee                                          Defendant

**PERSONAL** ☑ I have this day served the defendant _Corey Sims_ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This __15__ day of _October_, 20_19_

_____
DEPUTY                                    1001?

SHERIFF DOCKET _____  PAGE _____

COBB COUNTY, GEORGIA
Cobb County Sheriff's Office
185 Roswell Street
Marietta, Ga. 30090-9650

WHITE: Clerk        CANARY: Plaintiff Attorney        PINK: Defendant

IN THE SUPERIOR COURT OF SPALDING COUNTY

STATE OF GEORGIA

E-filed for Record
10/22/2019 4:13 PM
Superior/State Court, Spalding County

| | | |
|---|---|---|
| RICHARD CARRUTHERS,<br>       Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAKEVIEW LOAN SERVICING, LLC., | ) | |
| Assignee of Loan Care Servicing, Inc. via | ) | |
| Mortgage Electronic Registration Systems, Inc., | ) | |
| as nominee for Impac Mortgage Corp. | ) | |
| d/b/a Cashcall Mortgage, | ) | |
| LOAN CARE SERVICING CENTER, INC., | ) | |
| d/b/a LOAN CARE, | ) | |
| LOAN CARE, LLC, | ) | |
| d/b/a LOAN CARE, | ) | CASE NO.: 19V-989 |
| JAMES E. ALBERTELLI, P.A., | ) | |
| d/b/a ALBERTELLI LAW and ALAW, | ) | |
| and Unknown Conspirators, Affiliates, Agents, | ) | |
| and Jane Does and Richard Roes,<br>       Defendants. | ) | |

ORDER

The within and foregoing matter appeared before this Court in Fayette County, Georgia, on the 21st day of October, 2019, pursuant to the Plaintiff's Motion for a Temporary Injunction pursuant to O.C.G.A. § 9-11-65(a) to stop a non-judicial foreclosure sale scheduled for November

5, 2019[1]. The Plaintiff was self-represented at the hearing, and the Defendants were represented by Attorney Danielle Weit.

For the purposes of considering the merits of the Plaintiff's Motion, the Court assumes the following facts to be true.[2] On November 16, 2016, the Plaintiff, along with Christi Carruthers[3], as joint tenants with rights of survivorship, executed a deed to secure debt to Mortgage Electronic Registration Systems, Inc. ("MERS") to property located in Spalding County Georgia, which deed was ultimately assigned to the Defendant Lakeview Loan Services ("Lakeview"), Inc. At the closing, escrow funds were deposited by the Plaintiff to cover anticipated real estate property taxes, pursuant to paragraph 3 of the deed to secure debt.

The terms of the deed to secure debt provide for the periodic monthly payments of principal and interest, and it requires the inclusion of payments for impounds to cover real estate taxes and homeowner's insurance with payments beginning on January 1, 2017, in the monthly amount of $2,713.04. On or about March 07, 2017, Plaintiff made application for homestead exemption, which was granted by the Spalding County Tax Assessor, with a tax classification of L7, which, Plaintiff contends, resulted in a zero tax liability on the property for tax year 2017. Notice of the new tax status was delivered by Plaintiff to Defendant, refund of the tax impounds was requested, and subsequently made on or about June 08, 2017, which resulted in a new periodic monthly payment of $2,247.47.

Later, the Plaintiff became aware that his 2018 tax status would not be continued under the terms of the 2017 tax year zero-tax status. On June 25, 2018, Plaintiff made timely notice of appeal which would stay any tax due status. On October 15, 2018, Plaintiff became aware that Defendant had made unsolicited payment of the disputed 2018 property taxes in the amount of $4,954.38.

Plaintiff continued to make, and Defendant continued to accept, the periodic monthly payments in November 2018 that did not include escrow for real estate taxes. The December 2018 monthly payment without impound for real estate taxes was tendered by Plaintiff to Defendant.

---

[1] The Plaintiff raises a number of arguments in his petition, none of which are addressed herein, except for the specific issues dealt with in this Order.
[2] No evidence was actually proffered by either party at the hearing. In his statement to the Court, the Plaintiff outlined a number of "facts" he contends exist in this case. When defense counsel addressed the court in response, she indicated that the Defendants did not dispute any of the facts that have now been set out in this order.
[3] Christi Carruthers is not named as a Plaintiff to this action.

On February 11, 2019. Plaintiff became aware that Defendant had pre-emptively made a second unsolicited payment of the disputed 2018 property taxes in the amount of $4,803.76.

The Defendant Lakeview instituted the instant foreclosure proceeding because the payments tendered by the Plaintiff and his co-borrower did not include the escrow for the disputed real estate taxes.

Plaintiff contends, *inter alia*, that he is entitled to an interlocutory injunction, as he is not in arrears to Lakeview, as he has fully tendered all of his payments due, excluding the disputed real estate escrow. He further contends that he will suffer irreparable harm if the foreclosure sale is allowed to proceed as scheduled.

In defense to the Motion, the Defendants contend that the Plaintiff is not entitled to the relief sought because he is unlikely to prevail on the merits of the case. In support of their argument, Defendants cite paragraph 23 of the deed to secure debt[4] which states: "23. Homestead: Borrower waives all rights to homestead exemption in the property." Defendants argue that paragraph 23 would prevent the Plaintiff from disputing a property tax homestead exemption, pursuant to O.C.G.A. § 48-5-44[5], and which he contends he is entitled to receive.

However, the term "Homestead Exemption" under Georgia law is not limited to the exemption from real estate taxes under O.C.G.A. § 44-5-44. Additionally, O.C.G.A. § 44-13-100(a)(1) deals with a second type of Homestead Exemption:

> **a)** In lieu of the exemption provided in Code Section 44-13-1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
> > **(1)** The debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor. In the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the **exemption** hereunder shall be $43,000.00 . . .

---

[4] When questioned by the Court, counsel for the Defendants asserted no other argument in support of the Defendants' position, other than the provisions of paragraph 23.

[5] "The homestead of each resident of this state actually occupied by the owner as a residence and homestead shall be exempted from all ad valorem taxation for state, county, and school purposes, except taxes levied by municipalities for school purposes and except to pay interest on and to retire bonded indebtedness, for as long as the residence and homestead is actually occupied by the owner primarily as a residence and homestead. The exemption shall not exceed $2,000.00 of the value of the homestead."

Therefore, the issue before the Court is whether the "Homestead Exemption" referenced in paragraph 23 of the deed to secure debt refers to the provisions of O.C.G.A. § 44-5-54, the provisions of O.C.G.A. § 44-13-100 (a) (1), or perhaps both. In considering the Defendants' argument, the Court certainly can understand why a creditor, such as Lakeview, would desire to have its borrowers waive the provisions of O.C.G.A. § 44-13-100(a)(1). Otherwise, its ability to foreclose on a defaulting borrower's property would be subject to that exemption.

On the other hand, the Court is at a loss to see why a lender, such as Lakeview, would have any interest in its borrowers waiving their statutory rights to pay the lowest real estate taxes possible on the property subject to its deeds to secure debt. To the contrary, it seems that lenders would welcome the prospect of its borrowers paying reduced or, in this case, no real estate property taxes, as the risk of a tax sale is reduced, and if the borrower's taxes are reduced or eliminated, the borrowers would, in theory, have more funds available to pay the underlying secured debt.

The Court therefore holds that the "Homestead Exemption" referenced in paragraph 23 refers to O.C.G.A. § 44-13-100 (a) (1), and not to O.C.G.A. § 44-5-54. Thus, the Court rejects the Defendants' argument that based on paragraph 23 the Defendants are unlikely to prevail on the merits of the case. IT IS THEREFORE ORDERED that the Plaintiff's Motion for a Temporary Injunction is GRANTED.[6]

This 22nd day of October, 2019.

_____
John C. Carbo, Senior Judge
Spalding Superior Court

By signature on this Order the Judge hereby certifies that Statutory Electronic Service of said Order has been effected upon counsel by the Court's Staff Attorney via PeachCourt or Odyssey email generated upon the e-filing of same and that unrepresented litigants have been served via U.S. Mail at the address on file with the Clerk of Court.

**89R56LC**

---

[6] By this order the Court intimates no ruling on the ultimate merits of the case. The Court recognizes that when both parties present evidence (i.e., sworn testimony and exhibits) at trial, the results may well be different. However, those are different issues for a different day.

96 337

Civil Action No. _19 V — 989_

Date Filed _Oct. 04, 2019_

Magistrate Court ☐
Superior Court ☑
State Court ☐
Georgia, **Gwinnett County**

PAID

Attorney's Address
23 STILLWATER TRACE *
GRIFFIN, GA 30223

RICHARD CARRUTHERS
**Plaintiff**

VS.

Name and Address of party to be served.
CORPORATION SERVICE COMPANY
40 TECHNOLOGY PARKWAY SOUTH, SUITE 300
NORCROSS, GA 30092

LAKEVIEW LOAN SERVICING, LLC
**Defendant**

HEARING DATE
10/24/19

**Garnishee**

## Sheriff's Entry Of Service

**Personal** ☐

I have this day served the defendant _____ personally with a copy
of the within action and summons.

**Notorious** ☐

I have this day served the defendant _____ by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at
the residence of defendant.

**Corporation** ☒

Served the defendant _Lakeview Loan Servicing_ a corporation

by leaving a copy of the within action and summons with _Alieka Surah_
in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States
Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate
postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _11_ day of _Oct_, 20_19_.

_J. Hall_ S01115
**Deputy**

Sheriff Docket_____ Page_____

_____
**Gwinnett County, Georgia**

WHITE: Clerk     CANARY: Plaintiff / Attorney     PINK: Defendant

SC-2 Rev.3.13

E-filed for Record
11/20/2019 3:41 PM
Superior/State Court, Spalding County

## IN THE SUPERIOR COURT OF SPALDING COUNTY
## STATE OF GEORGIA

RICHARD CARRUTHERS,

     Plaintiff,

v.

LAKEVIEW LOAN SERVICING, LLC.,
ASSIGNEE OF LOAN CARE SERVICING,
INC. VIA MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR IMPAC MORTGAGE CORP.
DBA CASHCALL MORTGAGE, LOAN
CARE SERVICING CENTER, INC., DBA
LOAN CARE LOANCARE, LLC DBA
LOANCARE[1], JAMES E. ALBERTELLI, P.A.
DBA ALBERTELLI LAW AND ALAW, *et al*.,

     Defendants.

Case No: 19-V-989

## LAKEVIEW LOAN SERVICING AND LOANCARE'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COME NOW, Defendants Lakeview Loan Servicing, LLC, ("Lakeview") and LoanCare,

LLC ("LoanCare", collectively, Lakeview and LoanCare are referred to as the "Defendants") and

file this Answer and Affirmative Defenses to Plaintiff, Richard Carruthers' Emergency Motion

for Temporary Restraining Order Without Notice[2] (the "Complaint"), respectfully showing this

Honorable Court as follows:

---

[1] The style of the Complaint incorrectly identifies Lakeview Loan Servicing, LLC as an assignee of LoanCare, LLC who is also incorrectly named as a Defendant in this action and is erroneously identified "Loan Care Servicing Center, Inc., DBA Loan Care Loancare, LLC DBA Loancare". LoanCare, LLC does not operate under the name "Loan Care Servicing Center" and submits that no such independent entity exists.

[2] On October 9, 2019 Plaintiff filed an Emergency Motion for Temporary Restraining Order seeking a preliminary injunction from this court. While to date Plaintiff has not filed any Complaint or Petition in this Court relating to the matters upon which he seeks relief, Defendants file this Answer and Affirmative Defenses in abundance of caution.

**AFFIRMATIVE DEFENSES**

1.      Plaintiff's Complaint fails for failure to join a necessary party under O.C.G.A. § 9-11-19.

2.      Plaintiff's Complaint fails for failure to state a claim upon which relief can be granted.

3.      Plaintiff's Complaint fails for lack of personal jurisdiction.

4.      Plaintiff's Complaint fails because this Court lacks subject matter jurisdiction.

5.      Plaintiff is estopped from bringing his claim under the doctrine of unclean hands.

6.      Plaintiff's claims are barred by the doctrine of laches.

7.      Plaintiff's Complaint is barred for failure to satisfy a condition precedent.

Subject to and without waiving the foregoing affirmative defenses, Defendants Answer the specific averments contained in the Complaint as follows:

**ANSWER**

1.      Defendants deny the allegations contained in the unnumbered paragraph 1 appearing on page 1 of Plaintiff's Complaint.

2.      Defendants admit that Plaintiffs have requested a Temporary Restraining Order to enjoin a foreclosure sale of real property but deny that Plaintiff is entitled to the relief sought or any relief whatsoever. Defendants deny the remaining allegations contained in the unnumbered paragraph 2 appearing on page 2 of Plaintiff's Complaint.

3.      Defendants deny that jurisdiction is proper in this Court.

**BACKGROUND**

4.      Defendants admit that the subject of this action is the real property and improvements located at 23 Stillware Trace, Griffin, Spalding County, Georgia 30223;

2

Defendants further admit that Plaintiff obtained a loan and executed documents evidencing the debt. Defendants deny the remaining allegations contained in the unnumbered paragraph 4 that begins with "The parties" and appears beneath the heading "Background: on page 2 of the Plaintiff's Complaint.

5.      Defendants admit the allegations contained in the unnumbered paragraph 5 beginning with "Evidence of" that appears on page 2 of Plaintiff's Complaint.

6.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the unnumbered paragraph 6 beginning with "On or about March" that appears at the bottom of page 2 and continues to the top of page 3 of Plaintiff's Complaint.

7.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the unnumbered paragraph beginning with "Though, homestead" that appears at the top of page 3 of the Complaint.

8.      Defendants are without knowledge of information sufficient to form a belief as to the unnumbered paragraph beginning with "On October 15, 2018" that appears on page 3 of the Complaint.

9.      Defendants deny the allegations contained in the unnumbered paragraph beginning with "Plaintiff continued to make" that appears on page 3 of the Complaint.

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the unnumbered paragraph beginning with "On February 11" that begin at the bottom of page 3 and continues onto the top of page 4 of the Complaint.

11.     Defendants deny the allegations contained in the unnumbered paragraph beginning with "Plaintiff from January" that appears at the top of page 4 of the Complaint.

3

12.     Defendants deny the allegations contained in the unnumbered paragraph beginning with "Under the Defendants" that appears on page 4 of the Complaint.

## PLAINTIFF'S RESPONSE TO NOTICE OF FORECLOSURE

I.      Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph I of the Complaint, to the extent that paragraph I contains any allegations against Defendants, Defendants deny the same.

II.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph II of the Complaint, to the extent that paragraph II contains any allegations against Defendants, Defendants deny the same.

III.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph III of the Complaint, to the extent that paragraph III contains any allegations against Defendants, Defendants deny the same.

IV.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph IV of the Complaint, to the extent that paragraph IV contains any allegations against Defendants, Defendants deny the same.

V.      Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph V of the Complaint, to the extent that paragraph V contains any allegations against Defendants, Defendants deny the same.

VI.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph VI of the Complaint , to the extent that paragraph IV contains any allegations against Defendants, Defendants deny the same.

VII.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph VII of the Complaint, to the extent that paragraph VII contains any allegations against Defendants, Defendants deny the same.

VIII.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph VIII of the Complaint, to the extent that paragraph VIII contains any allegations against Defendants, Defendants deny the same.

IX.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph IX of the Complaint, to the extent that paragraph IX contains any allegations against Defendants, Defendants deny the same.

X.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph X of the Complaint, to the extent that paragraph X contains any allegations against Defendants, Defendants deny the same.

XI.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph XI of the Complaint, to the extent that paragraph XI contains any allegations against Defendants, Defendants deny the same.

XII.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph XII of the Complaint, to the extent that paragraph XII contains any allegations against Defendants, Defendants deny the same.

XIII.    Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph XIII of the Complaint, to the extent that paragraph XIII contains any allegations against Defendants, Defendants deny the same.

XIV.      Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph XIV of the Complaint, to the extent that paragraph XIV contains any allegations against Defendants, Defendants deny the same.

XV.      Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in paragraph XV of the Complaint, to the extent that paragraph XV contains any allegations against Defendants, Defendants deny the same.

## COUNT –I Tortious Interference by Defendant

13.      Defendants deny the allegations contained in the unnumbered paragraph beneath the header "Count I" that appears on page 7 of the Complaint.

## COUNT – II Breach of Contract by Defendant

14.      Defendants deny the allegations contained in the unnumbered Paragraph beneath the header "Count II" that appears at the bottom of page 7 of the Complaint and continues onto page 8.

15.      Defendants deny the allegations contained in the unnumbered paragraph beginning "Defendant attempts" at the top of page 8 of the Complaint.

16.      Defendants are without knowledge or information to form a belief as to the truth of the allegations contained in the unnumbered paragraph beginning "Yet no lien" that appears at the bottom of page 8 and continues at the top of page 9 of the Complaint.

17.      Defendants deny the allegations contained in the unnumbered paragraph beginning "Defendant refuses" that appears on page 9 of the Complaint.

18.      Defendants deny the allegations contained in the unnumbered paragraph beginning "Defendant has refused" that appears on page 9 of the Complaint.

19.     Defendants deny the allegations contained in the unnumbered paragraph beginning "Further, Defendant" that appears on page 9 of the Complaint.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the unnumbered paragraph that begins "on September 14, 2004" and appears at the bottom of page 9 continuing onto page 10 of the Complaint.

## COUNT –III Violation of the Fair Debt Collection Practices Act "FDCPA" 15 USC 1692 et seq. by Defendant

21.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff is exposed to, to the extent that there are any allegations against Defendants contained in the unnumbered paragraph appearing beneath the header "Count III" Defendants deny them.

22.     Defendants deny the allegations contained in the unnumbered paragraph beginning "As recently as" that appears in the center of page 10 of the Complaint.

23.     Defendants deny the allegations contained in the unnumbered paragraph beginning with the words "Rather than" that appears on the bottom of page 10 and continues onto the top of page 11 of the Complaint.

a.   Defendants deny the allegations contained subpart 1 that appears at the top of page 11 of the Complaint;

b.   Defendants deny the allegations contained subpart 2 that appears at the top of page 11 of the Complaint;

c.   Defendants deny the allegations contained subpart 3 that appears at the top of page 11 of the Complaint;

d.   Defendants deny the allegations contained subpart 4 that appears at the top of page 11 of the Complaint;

e.  Defendants deny the allegations contained subpart 5 that appears at the top of page 11 of the Complaint;

f.  Defendants deny the allegations contained in subpart 6 that appears at the top of page 11 of the Complaint.

g.  Defendants deny the allegations contained in subpart 7 that appears at the top of page 11 of the Complaint.

h.  Defendants deny the allegations contained in subpart 8 that appears at the top of page 11 of the Complaint.

i.  Defendants deny the allegations contained in subpart 9 that appears at the top of page 11 of the Complaint.

j.  Defendants deny the allegations contained in subpart 10 that appears at the top of page 11 of the Complaint.

24.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first unnumbered paragraph beginning "The residence" that appears on page 11 of the Complaint. To the extent that the paragraph contains any allegations against Defendants, they are denied.

25.  Defendants deny the allegations contained in the unnumbered paragraph beginning "Defendant's illegal" that appears on page 11 of the Complaint.

26.  Defendants deny the allegations contained in the unnumbered paragraph beginning "Plaintiff seeks" that begins at the bottom of page 11 of the Complaint and continues onto the top of page 12 of the Complaint.

**COUNT – IV Equity Stripping**
**facilitated by FDCPA violation—Advertising existence of debt**

27. Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph beneath the bolded header for "Count —IV" in the Complaint, to the extent that the unnumbered paragraph contains any allegations against Defendants, Defendants deny the same.

**ARGUMENT**

28. Defendants deny the allegations contained in the unnumbered paragraph that begins at the bottom of page 12 and continues onto the top of page 13 of the Complaint.

29. Defendants deny the allegations contained in the unnumbered paragraph that begins "Notice that" and appears in the center of page 13 of the Complaint.

30. Defendants deny the allegations contained in the unnumbered paragraph that begins "Is it a surprise" which appears on page 13 of the Complaint.

31. Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph beginning at the bottom of page 13 and continuing onto the top of page 14 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants, Defendants deny them.

32. Defendants deny the allegations contained in the unnumbered paragraph beginning "Plaintiff is grievously harmed" that appears towards the top of page 14 of the Complaint.

33. Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph in the center of page 14 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants there are denied.

9

34.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph in the center of page 14 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants there are denied.

35.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph in the center of page 14 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants there are denied.

36.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph at the bottom of page 14 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants there are denied.

37.     Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff shows the Court in the unnumbered paragraph at the top of page 15 of the Complaint. To the extent that the unnumbered paragraph contains any allegations against Defendants they are denied.

## THEORIES UPON WHICH PLAINTIFF EXPECTS TO PREVAIL

38.     Defendants are without knowledge or information as to what Plaintiff expects in any hearing in this action. To the extent that the unnumbered paragraph that appears beneath Plaintiffs' heading "Theories" contains any allegations against Defendants, they are denied.

1.

Defendants deny the allegations contained in paragraph 1 on page 15 of the Complaint.

2.

Defendants deny the allegations contained in paragraph 2 on page 15 of the Complaint.

3.

Defendants deny the allegations contained in paragraph 3 on page 15 of the Complaint.

4.

Defendants deny the allegations contained in paragraph 4 on page 15 of the Complaint.

39.    Defendants deny each and every allegation contained in the Complaint not specifically admitted denied or otherwise controverted herein.

40.    Defendants deny that Plaintiff is entitled to the relief sought in the Complaint or any relief whatsoever.

Respectfully submitted, this 20th day of November 2019.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
COREY R. MENDEL (GA Bar No. 604149)
**RUBIN LUBLIN, LLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com
crothschild@rubinlublin.com

*Attorneys for Defendants*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 20th day of November 2019, serve all parties in this matter with the foregoing by placing a true and correct copy of same in the United States Mail, with first-class prepaid postage affixed thereto, properly addressed as follows:

Richard Carruthers
23 Stillwater Trace
Griffin, Georgia 30223

Cory P. Sims
100 Galleria Parkway, Suite 960
Atlanta, Georgia 30339

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

## IN THE SUPERIOR COURT OF SPALDING COUNTY
## STATE OF GEORGIA

RICHARD CARRUTHERS,

     Plaintiff,

v.

LAKEVIEW LOAN SERVICING, LLC.,
ASSIGNEE OF LOAN CARE SERVICING,
INC. VIA MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR IMPAC MORTGAGE CORP.
DBA CASHCALL MORTGAGE, LOAN
CARE SERVICING CENTER, INC., DBA
LOAN CARE LOANCARE, LLC DBA
LOANCARE[1], JAMES E. ALBERTELLI, P.A.
DBA ALBERTELLI LAW AND ALAW, *et al*.

     Defendants.

E-filed for Record
4/10/2020 10:39 AM
Superior/State Court, Spalding County

Case No: 19-V-989

## LAKEVIEW LOAN SERVICING AND LOANCARE'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

COME NOW, Defendants Lakeview Loan Servicing, LLC, ("Lakeview") and LoanCare,

LLC ("LoanCare", collectively herein, Lakeview and LoanCare are referred to as "Defendants")

and move this Court to dismiss Plaintiff's Emergency Motion for Temporary Restraining Order

Without Notice (the "Complaint") pursuant to O.C.G.A. § 9-11-12(c). In support of this motion,

Defendants contemporaneously file their brief in support containing arguments and citation of

authorities.

---

[1] The style of the Complaint incorrectly identifies Lakeview Loan Servicing, LLC as an assignee of LoanCare, LLC who is also incorrectly named as a Defendant in this action and is erroneously identified "Loan Care Servicing Center, Inc., DBA Loan Care Loancare, LLC DBA Loancare". LoanCare, LLC does not operate under the name "Loan Care Servicing Center" and submits that no such independent entity exists.

1

WHEREFORE, Defendants pray for the following relief:

(a) That this Court grant its Motion for Judgment on the Pleadings upon a finding that the

Plaintiff has failed to state a claim upon which relief may be granted;

(a) Dissolve the temporary injunction enjoining foreclosure of the Property;

(b) And for such other relief as the Court finds good and Proper.

Respectfully submitted, this 10th day of April 2020.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rlselaw.com.com

*Attorney for Lakeview and LoanCare*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 10th day of April, 2020, serve all parties in this matter with the foregoing by placing a true and correct copy of same in the United States Mail, with first-class prepaid postage affixed thereto, properly addressed as follows:

Richard Carruthers
23 Stillwater Trace
Griffin, Georgia 30223

Cory P. Sims
100 Galleria Parkway, Suite 960
Atlanta, Georgia 30339

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

3

## IN THE SUPERIOR COURT OF SPALDING COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS, | **E-filed for Record**<br>**4/10/2020 10:39 AM**<br>**Superior/State Court, Spalding County** |
| Plaintiff, | |
| v. | |
| LAKEVIEW LOAN SERVICING, LLC., ASSIGNEE OF LOAN CARE SERVICING, INC. VIA MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR IMPAC MORTGAGE CORP. DBA CASHCALL MORTGAGE, LOAN CARE SERVICING CENTER, INC., DBA LOAN CARE LOANCARE, LLC DBA LOANCARE[1], JAMES E. ALBERTELLI, P.A. DBA ALBERTELLI LAW AND ALAW, *et al*. | Case No: 19-V-989 |
| Defendants. | |

### LAKEVIEW LOAN SERVICING AND LOANCARE'S BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

COME NOW, Defendants Lakeview Loan Servicing, LLC, ("Lakeview") and LoanCare, LLC ("LoanCare", collectively herein, Lakeview and LoanCare are referred to as "Defendants") and file this Brief in Support of Their Motion for Judgment on the Pleadings to dismiss Plaintiff, Richard Carruthers' Emergency Motion for Temporary Restraining Order Without Notice[2] (the "Complaint"), respectfully showing this Honorable Court as follows:

---

[1] The style of the Complaint incorrectly identifies Lakeview Loan Servicing, LLC as an assignee of LoanCare, LLC who is also incorrectly named as a Defendant in this action and is erroneously identified "Loan Care Servicing Center, Inc., DBA Loan Care Loancare, LLC DBA Loancare". LoanCare, LLC does not operate under the name "Loan Care Servicing Center" and submits that no such independent entity exists.

[2] On October 9, 2019 Plaintiff filed an Emergency Motion for Temporary Restraining Order seeking a preliminary injunction from this court. While to date Plaintiff has not filed any

## STATEMENT OF FACTS

The instant action is nothing more than Plaintiff's attempt to avoid foreclosure of the property located at 23 Stillwater Trace, Griffin, Spalding County, Georgia 30223 (the "Property"), despite admitting that he has failed to comply with the payment terms of the security deed encumbering the Property. Specifically, the Complaint states that on November 23, 2016,[3] Plaintiff obtained a loan in the amount of $430,0000.00 from IMPAC Mortgage Corporation DBA Cashcall Mortgage ("IMPAC"). Complaint, p. 2, 12.  As security for the debt, Plaintiff and Christi Carruthers executed a security deed which conveyed the Property to Mortgage Electronic Registration Services, Inc., solely as nominee for IMPAC. Complaint Ex. A. The security deed was recorded at Deed Book 4119, Page 39, Spalding County, Georgia records on December 12, 2016 (the "Security Deed"). The Security Deed was last Assigned to Lakeview Loan Servicing, LLC, via the Assignment of Security Deed recorded at Deed Book 4428, Page 128, Spalding County Georgia records (the "Assignment"). A true and correct copy of the Assignment is attached hereto as **Exhibit "1"**.[4]

---

Complaint or Petition in this Court relating to the matters upon which he seeks relief, Defendants file this Answer and Affirmative Defenses in abundance of caution.

[3] Plaintiffs Complaint contains what appears to be a transcription error. Plaintiff has attached the security deed that was executed in conjunction with the loan documents listing the date for the real estate transaction as November 23, 2016.

[4] This Court can take judicial notice of public records pursuant to O.C.G.A. § 24-2-201 without converting this motion to one for summary judgment. Although there are no Georgia cases on point, *see, e.g., Bank of Am., N.A. v. Johnson*, 299 Ga. 861, 864 n.3, 792 S.E.2d 704 (2016) (declining to address the question), federal courts do not hesitate to take judicial notice of public records. *See Goodrich v. Bank of Am., N.A.*, at *1 n.4 (N.D. Ga. May 20, 2015) (collecting cases). They do so using Fed. R. Evid. 201. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Federal Rule 201 is identical to O.C.G.A. § 24-2-201, "[a]nd where the new Georgia [evidence] rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586, 592, 769 S.E.2d 329 (2015).

The terms of the Security Deed require the borrower to tender funds to the lender on a monthly basis for deposit in an escrow account that is used for the payment of property taxes. Complaint, p. 8. The Security Deed includes a provision stating that "Borrower shall pay Lender the Funds for Escrow Items unless lender waives Borrower's obligation to pay the Funds for any and all Escrow Items. Lender may waive Borrower's obligation to pay to Lender funds for any or all Escrow Items at any time. Any such waiver may only be in writing." Complaint, p. 8. Despite this obligation, Plaintiff, who is currently involved in a dispute with the Spalding County Tax Assessor over the value of assessed taxes, has been making incomplete mortgage payments which exclude the amount of this monthly escrow. Complaint, pp. 2-3.

Throughout his Complaint, Plaintiff attempts to excuse his admitted failure to pay by conflating his admitted mortgage default with allegations relating to a tax appeal he filed on June 25, 2018. Complaint, p. 3. Plaintiff acknowledges that upon filing the appeal, he did not notify Defendants that he disputed the amount of his current assessment nor claim that he sought any hold or modification of the terms of his mortgage regarding the calculation of the escrow payments based upon the dispute over the 2018 assessment. Complaint, pp. 3-4. Instead, Plaintiff sets forth a series of rambling assertions relating to his intentional submission of incomplete monthly mortgage payments that deliberately excluded the tax escrow amounts required by the terms of the Security Deed. Complaint, pp. 2-4. As a result of the delinquent payments, Plaintiff's escrow account lacked the necessary funds to cover the payment of his 2018 taxes, and upon the lenders payment of the assessment, Plaintiff's escrow account was overdrawn. Complaint, p. 3. In the two months following the tax payment, Plaintiff sent two more incorrect mortgage payments to Loancare. Complaint, p. 3.

3

Despite his intentional default on the terms of his loan, Plaintiff filed this action seeking an injunction to enjoin foreclosure of the Security Deed despite Plaintiff's established default. Complaint, *generally*. While the allegations of the Complaint are varied, including claims for tortious interference with contract, breach of contract, breach of good faith, wrongful foreclosure, and several attempts to challenge the Security Deed, the crux of all of these claims hinge on Plaintiffs' erroneous belief that the Defendants' refusal to permit a unilateral modification of the Security Deed constitutes some violation of his rights and entitles him immunity from foreclosure. Accordingly, Plaintiff's claims which lack any legal or factual foundation fail as a matter of law, and his Complaint must be dismissed in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

### A.    STANDARD OF REVIEW

A motion for judgment on the pleadings that does not rely on any material outside of the pleadings, such as this one, "is the equivalent of a motion to dismiss for failure to state a claim upon which relief can be granted." *Snooty Fox, Inc. v. First Am. Inv. Corp.*, 144 Ga. App. 264, 264, 241 S.E.2d 47 (1977). "A complaint fails to state a claim upon which relief can be granted and warrants dismissal or judgment on the pleadings 'only if . . . its allegations disclose with certainty that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks.'" *Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 88, 720 S.E.2d 370, 374 (2011) (quoting *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 134, 709 S.E.2d 314, 316 (2011)). "At a minimum, a complaint must contain '[a] short and plain statement of the claims showing that the pleader is entitled to relief … and 'this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading.'" *Speedway Motorsports, Inc. v. Pinnacle Bank,* 315

Ga. App. 320, 727 S.E.2d 151, 153 (2012) (quoting *Benedict*, 309 Ga. App. at 134, 709 S.E.2d at 316). In deciding a motion to dismiss, all "well-pled material allegations in the complaint" are treated as true. *Roberson v. Northrup*, 302 Ga. App. 405, 691 S.E.2d 547 (2010), though "[e]xhibits attached to a petition control over its general allegations." *Martin*, 140 Ga. App. at 898, 232 S.E.2d at 171 (1977).

## B.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW

Plaintiff's first enumerated count is for the Defendants' purported "tortious interference" of tax valuation appeal. Complaint, p. 7. In Georgia, a tortious interference requires an interference with a contractual right or a business relationship. The "elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Blakey v. Victory Equip. Sales, Inc.,* 259 Ga. App. 34, 38, 576 S.E.2d 288, 292 (2002).

Here, Plaintiff fails to demonstrate the existence of any relationship or contract to be interfered with. The pending tax appeal at the center of his claims is neither a business relationship nor a contract. Instead Plaintiff's ad valorem tax appeal is a dispute with a governmental entity as to the valuation of his home and whether he is exempt from certain charges that are assessed as a matter of law by the state. There is simply no contract or relationship between Plaintiff and the state to be interfered with. Accordingly, Plaintiff's claim fails for its utter lack of a foundational precondition for his claim.

5

Moreover, even if this Court were to find some basis for the alleged interference, the Complaint itself fails to establish satisfaction of the foundational elements. Georgia law is clear that the Defendant in any tortious interference claim, "must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract" for the conduct to be tortious interference. *Dalton Diversified, Inc. v. AmSouth Bank,* 270 Ga. App. 203, 209, 605 S.E.2d 892, 898 (2004). In the instant situation, Defendants payment of the assessed taxes on the Property would be within the scope of its rights under the Security Deed and cannot be considered an interference without privilege to any of Plaintiffs' rights or potential rights. Georgia Courts have long held that the exercise of an absolute legal right is not and cannot be considered interference with a contract or relationship. *Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 209, 605 S.E.2d 892, 898 (2004).

Where a defendant has a legitimate interest in subject of the transaction, through a contract or a party, then he is not a stranger to the contract and is acting within his privilege. *Disaster Servs., Inc. v. ERC P'ship,* 228 Ga. App. 739, 741, 492 S.E.2d 526, 529 (1997). In this case, Defendant Lakeview as assignee of the Security Deed, holds legal title to the property that is the subject of the tax appeal. It is the holder of a first priority secured lien that encumbers the assessed property accordingly, Lakeview is not estranged from the property that is the subject of the interference and is therefore not acting without privilege. "Actions by a secured creditor exercising its contractual rights do[] not constitute the wrongful improper conduct necessary for this tort action; for liability, the defendant must have 'acted improperly and without privilege.'" *Dalton Diversified, Inc. v. AmSouth Bank,* 270 Ga. App. 203, 209, 605 S.E.2d 892, 898 (2004). Accordingly, Plaintiff's Tortious Interference Claim fails as to Lakeview.

Similarly, LoanCare as servicer of the loan, and a party in privity with Lakeview, cannot be deemed a stranger to the security deed. "Where a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract." *Renden, Inc. v. Liberty Real Estate*, Ltd. *Partnership III,* 213 Ga.App. 333, 336(2)(b), 444 S.E.2d 814 (1994). Since LoanCare services the loan on behalf of Lakeview, it has a business relationship with Lakeview which relates directly to Lakeview's interest in the subject property. LoanCare's relationship with Lakeview sufficiently connects it to the parties with an interest in the Property and it also cannot be considered a stranger to the Contact at the center of Plaintiff's claim. To be liable for tortious inference to a contract or a business relationship, the defendant must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract; thus, all parties to an interwoven contractual arrangement cannot be liable for tortious interference with any of the contracts or business relationships that underlie such contractual arrangement. *Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 209, 605 S.E.2d 892, 898 (2004). With that established, it is clear that Defendants acted with privilege pursuant to their rights in the Security Deed and Plaintiff's claim fails upon its first element.

Moreover, Plaintiff cannot satisfy the requirement of intentional interference with his appeal, since, by his own admission he failed to provide any notice that he intended to or had appealed until after the purported interference. Specifically, Plaintiff states that he filed his appeal of the assessment on June 25, 2018. Complaint, p. 3. He then alleges that on October 15, 2018, he discovered that Defendants had tendered payment of the 2018 property taxes in the amount of $4,954.38. Complaint, p. 3. Only then does Plaintiff state that he "made immediate notice and demand to Defendant that it cease its interference between the Tax Assessor and the

Plaintiff." Complaint, p. 3. By his own admission, Plaintiff did not provide any notice to Defendants' whatsoever of his pending appeal or his dispute of the assessed value. In fact, he unequivocally establishes that he did not notice the Defendants of the tax dispute until October of 2018, nearly four months after the alleged appeal. Accordingly, Plaintiff's request that Defendants delay payment of the 2018 property tax assessment, after Defendants had already paid the assessment, could not have constituted the purposeful act with intent to injure that is required for Plaintiff's tortious interference claim.

Finally, Plaintiff's pleading does not demonstrate that any action by the Defendants to meet the damages requirement for his claim. The Complaint states that the "resolution of the [tax] appeal … remains pending at this distant date." Complaint, p. 7. Accordingly, Defendants' payment of the 2018 taxes has had no effect on him whatsoever. Having filed an appeal, Plaintiff is now subject to the decision of the authority reviewing his tax appeal. There are no allegations in the Complaint that Defendants' payment of the 2018 property taxes have caused the appeal to be dismissed, nor are there any claims that Defendants' tax payments have caused the tax authority to take any action that would have any effect on Plaintiff's future tax assessments. Plaintiff claims that the June 25, 2018 appeal caused a "stay in any tax due status." Complaint, p. 3. Thus, his filing of the appeal effectively prevented the establishment of a tax lien for his failure to pay, during the pendency of his appeal. Similarly, Defendants payment of the 2018 taxes has the effect of preventing the establishment of a tax lien for past due amounts. Accordingly, Plaintiff is in the exact same position following Defendants' payments that he was in prior to Defendants remittance of the tax assessed amounts. "Although allegations are taken as true, they must either explicitly or implicitly support the relief sought; otherwise a party fails to show why they are entitled to relief." *Northway v. Allen*, 291 Ga. 227, 229–30, 728 S.E.2d 624,

626 (2012). Plaintiff simply cannot demonstrate the requisite damages for his tortious interference claim. He cannot show that Defendants actions had any effect whatsoever on his tax appeal and his claim must be dismissed.

## C.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Similarly, Plaintiff's claim for breach of contract lacks the facts necessary to make a good claim. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Canton Plaza, Inc. v. Regions Bank, Inc.,* 315 Ga. App. 303, 306(2012); *Duke Galish, LLC v. Manton,* 308 Ga.App. 316, 320(2) (2011). To establish a claim, a plaintiff's complaint must identify a contractual provision and demonstrate that the defendants' actions violated its terms. *Id.* In the instant action Plaintiff's claim for breach of contract hinges on two erroneous conclusions. First, Plaintiff asserts that Defendants' refusal to allow him to unilaterally modify the terms of repayment under the Security Deed constitutes a breach of his contractual rights. Complaint, *generally*. Second Plaintiff asserts that Defendants' actions in collecting payments for escrowed expenses and remitting payment of assessed taxes in accordance with the terms of the Security Deed somehow violates his rights thereunder. Neither of Plaintiff's contentions are correct nor his breach claim fails as a matter of law.

The first prong of Plaintiff's claim for breach of contract relies on the erroneous belief that, he is entitled to unilaterally modify the repayment terms of his loan. By Plaintiff's own admission, in November of 2018, he made an incorrect payment to Defendants which "did not include an impound for real estate taxes." Complaint, p. 3. He then admits that he made another, similarly incomplete, payment in December of 2018, and that "from January 2019 thru June 2019 [he] made copious volume of communication with Defendant" in an effort to convince

9

Defendants to accept his unilateral attempt at contractual modification. Complaint, pp. 3-4. Plaintiff goes on to reproduce a portion of paragraph 3 of the Security Deed which states: "Borrower shall pay Lender the Funds for Escrow Items unless lender waives Borrower's obligation to pay the Funds for any and all Escrow Items. Lender may waive Borrower's obligation to pay to Lender funds for any or all Escrow Items at any time. Any such waiver may only be in writing." Complaint, p. 8.

In Georgia, the law is clear that "[i]t is elemental that it is not possible to have a unilateral modification of a contract previously entered into between the parties." *Eden v. Eden*, 344 Ga. App. 864, 868, 812 S.E.2d 317, 321 (2018). Here, Plaintiff's factual allegations establish unequivocally, that his efforts to modify his monthly payment amounts were entirely unilateral. Further, he cites portions of the Security Deed which demonstrate that LoanCare and Lakeview acted within its rights both in tendering the tax payment and in refusing to permit him to change his payment amount. Accordingly, having established the Defendants' compliance and his own breach, Plaintiff has failed to plead the facts necessary to state a claim for breach of contract. The claim fails as a matter of law and must be dismissed. *Northway v. Allen*, 291 Ga. 227, 229–30, 728 S.E.2d 624, 626 (2012).

Moreover, the second prong of Plaintiff's breach claim is equally meritless. In his Complaint, Plaintiff contends that Defendants' collection of escrowed sums and payment of assessed real estate taxes violated the terms of the Security Deed by "creating a debt then forcing that debt upon Plaintiff against thread of foreclosure." Complaint, pp. 8-9. Importantly, the Plaintiff's own allegations establish conclusively the requirement that he tender monthly escrow payments to the lender. As discussed in the Complaint, the Security Deed requires that "Borrower shall pay Lender the Funds for Escrow Items unless lender waives Borrower's

10

obligation to pay the Funds for any and all Escrow Items." Complaint, p. 8. To that end, Plaintiff's contentions that the default on his loan is due to Defendants' collection of escrow payments and payment of real estate taxes falls flat. Having identified the provisions which require him to make the subject payments and having admitted that he intentionally did not make those payments, Plaintiff has established that his actions, and not the actions of Defendants form the breach of his contract. Complaint, p. 9. Thus, Plaintiff has failed to establish any breach on behalf of Defendants and his alternative breach of contract argument fails and the claim must be dismissed.

## D.   PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH FAILS FOR LACK OF FOUNDATION

In conjunction with his breach of contact claim, Plaintiff avers that Defendants have acted in bad faith through a "steadfast refusal [of his attempts to modify the contract and their actions in pursuit of], a non-judicial foreclosure against Plaintiff." Complaint, *generally*. Through this alternate argument, Plaintiff seeks to void the Security Deed altogether claiming that "Defendants lack of a good faith expectation that it would honor the terms of the Security Deed" make "the contract void ab initio." Complaint, p. 6, ¶ XIV. This claim fails to state any cause of action whatsoever and fails as a matter of law.

First, in Georgia the breach of the implied covenant of good faith and fair dealing does not constitute a ground for a stand-alone claim. It is well established that the implied covenant of good faith and fair dealing, implicit in every contract's performance and enforcement "modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." *Oconee Fed. Sav. & Loan Ass'n v. Brown*, 351 Ga. App. 561, 570, 831 S.E.2d 222, 231

(2019). Accordingly, having dispensed with the substance of Plaintiff's breach of contract claim, his count for breach of the covenant of good faith dissipates for lack of foundation.

Moreover, "[i]n Georgia, the law is clear that [t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 867, 868, 257 S.E.2d 283 (1979)); *see also (Ceasar v. Wells Fargo Bank, N.A.,* 322 Ga. App. 529, 533 (2) (c), 744 S.E.2d 369 (2013)("Because the [borrowers] did not assert a breach of contract claim, their claim for breach of the implied covenant of good faith and fair dealing failed as a matter of law.")*; Heritage v. Creek Dev. Corp. v. Colonial Bank,* 268 Ga. App. 369, 374 (3), 601 S.E.2d 842 (2004) ("[i]nasmuch as [borrower] cannot prevail on its breach of contract claim it cannot prevail on a cause of action based on the failure to act in good faith in performing the contract."); *see also Alan's of Atlanta, Inc. v. Minolta Corp.,* 903 F.2d 1414, 1429 (IV) (11th Cir. 1990) ("The covenant [to perform in good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms ... de facto when performance is maintained de jure."). Therefore, this claim must also be dismissed.

## E.   PLAINTIFF'S ATTEMPTS TO STALL FORECLOSURE AND INVALIDATE THE SECURITY DEED MUST BE DISMISSED

Finally, the remaining allegations in Plaintiff's Complaint assert a hodgepodge of violations that each hinge upon Plaintiff's contentions that while he appeals his 2018 tax assessment, he is entitled to default on his mortgage obligations and also avoid foreclosure. The thrust of this argument is enumerated over the course of separate claims for wrongful foreclosure, unspecified violations of the Fair Debt Collections Practices Act, and negligent infliction of emotional distress. Complaint, pp. 10-17. In actuality, Plaintiff fails to establish that

12

he is entitled to relief on any of these claims and his attempts to dispute the Defendants' right to foreclose fail as a matter of law.

### i. Wrongful foreclosure

Though the claims contain some distinct allegations the common thread for each of them is Plaintiff's belief that he is entitled to make incomplete monthly mortgage payments without incurring a default on his loan. This premise fails completely and as a result, Plaintiff's claims that rely upon it also fail. First, Plaintiff lacks any facts to support Plaintiff's allegations of wrongful foreclosure whatsoever. In Georgia a "plaintiff asserting a claim of wrongful foreclosure must establish (1) a legal duty owed to it by the foreclosing party, (2) a breach of that duty, (3) a causal connection between the breach of that duty and the injury it sustained, and (4) damages." *Canton Plaza, Inc. v. Regions Bank, Inc*., 315 Ga. App. 303, 306 (2012); *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371(1) (2004); *Humphrey v. JP Morgan Chase Bank, N.A.*, 337 Ga. App. 331, 332–33 (2016). On October 22, 2019, this Court entered an Order enjoining the subject foreclosure sale and as a result, no foreclosure sale has taken place. "[A]s a matter of law, a plaintiff cannot state a claim for wrongful foreclosure when no foreclosure sale has taken place." *Sparra v. Deutsche Bank Nat. Tr. Co.*, 336 Ga. App. 418, 420 (2016); *Humphrey v. JP Morgan Chase Bank, N.A.,* 337 Ga. App. 331, 332–33 (2016); *Jenkins v. McCalla Raymer, LLC,* 492 Fed. Appx. 968, 972 (11th Cir. 2012) (concluding that "Georgia law requires a plaintiff seeking damages for wrongful foreclosure to establish that the property at issue was actually sold at foreclosure"). Accordingly, Plaintiff's claim for wrongful foreclosure fails on its face.

To the extent that Plaintiff seeks an equitable remedy to enjoin Defendants from foreclosing on the Property while his tax appeal remains pending, he is simply not entitled to the

relief he seeks. Beyond the fact that Plaintiff has failed to establish any claim that would permit either remedy, he is barred from seeking equitable relief for the simple reason that he has not fulfilled a major prerequisite for seeking equity. Under Georgia law, **all** equitable claims are barred by failure to tender. *See Taylor, Bean & Whitaker Mortgage Corp. v. Brown*, 276 Ga. 848, 849-50, 583 S.E.2d 844, 846 (2003); *see also Smith v. Citizens & S. Fin. Corp.*, 245 Ga. 850, 852, 268 S.E.2d 157 (1980); *Blake v. Bank of Am., N.A.*, No. 1:14-CV-3252-TWT, 2015 WL 4756773, at *8 (N.D. Ga. Aug. 12, 2015) (citations omitted). It is "necessary" for plaintiffs to allege that they "have tendered the amounts due on their loan . . . in order for the Court to have the ability to grant them equitable relief." *Cox v. Bank of Am. Corp.*, No. 1:15-CV-172-WSD, 2015 WL 5174013, at *12 (N.D. Ga. Sept. 3, 2015), *appeal dismissed* (Dec. 21, 2015) (citing *Stewart v. Suntrust Mortgage, Inc.*, 331 Ga. App. 635, 640-41, 770 S.E.2d 892, 898 (2015)).

Here, Plaintiff does not allege anywhere in the Complaint that he has tendered the amount due on the loan. Complaint, *generally.* Rather he alleges that he "has sought resolution of the dispute between itself [sic] and Defendant by offer to make [incomplete] payments of funds." Complaint, p. 7. Importantly, Plaintiff's offer to comply with his contractually required mortgage payments is not sufficient to constitute a tender of the actual mortgage payments. Without tendering payment, a Plaintiff who is in default on his loan obligations, cannot obtain injunctive relief because "[h]e who would have equity must do equity . . . ." O.C.G.A. § 23-1-10; see also *Walker v. JPMorgan Chase Bank, N.A.*, 87 Fed. R. Serv. 2d 795 (N.D. Ga. 2013). Therefore, this Court should find that Plaintiff is estopped from obtaining any judgment in equity that would invalidate his debt, and further this Court should dissolve the injunction enjoining a foreclosure sale of the Property.

### ii. Claim under the FDCPA

Next, Plaintiff's assertion of violations of the Fair Debt Collection Practices Act fails as well. The FDCPA provides a civil cause of action against debt collectors who violate the provisions of the Act. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). "To state a claim under the FDCPA, a plaintiff must establish each of the following elements: (1) that he was the object of 'collection activity' arising from 'consumer debt'; (2) that the defendant qualifies as a 'debt collector' under the FDCPA; and (3) that the defendant engaged in an act or omission prohibited by the FDCPA." *In re Ward*, 583 B.R. 558, 570 (Bankr. S.D. Ga. 2018); *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency (PHEAA)*, 2017 WL 1377719, at *2 (S.D. Ga. Apr. 11, 2017).

Ignoring the fact that Plaintiff fails to plead sufficient facts to establish that Defendants are debt collectors, Plaintiff's allegation itself is insufficient. His FDCPA claim is wholly reliant on his displeasure that his billing statements continued to reflect the amount that he is contractually obligated to pay, rather than the amount that he prefers to pay. Complaint, p. 3. He neither disputes the amount of his debt nor the debt's validity. Instead, he asserts that he would like Defendants to modify his contractual obligations and asserts that Defendants' refusal somehow violated his rights. Complaint, *generally*. Accordingly, though the claim couches Defendants' actions as an attempt to collect an inaccurate and disputed amount, it is actually an admission that the amounts he has been billed are correct, but not to his liking. Complaint, p. 9. Thus, Plaintiff has failed to plead any action by Defendants that constitutes a violation of the FDCPA and his claim must be dismissed.

### iii. Negligent Infliction of Emotional Distress

Finally, Plaintiff attempts at various points in the Complaint to assert a claim for negligent infliction of emotional distress ("NIED"). Under Georgia law, an NIED claimant "must meet the requirements of the Georgia impact rule, which requires that he show that (1) he suffered a physical impact; (2) the physical impact caused him physical injury; and (3) the physical injury caused his mental suffering or emotional distress. *Kirkland v. Earth Fare, Inc.,* 289 Ga. App. 819, 821, 658 S.E.2d 433, 436 (2008). Importantly, Plaintiff's allegations regarding the alleged emotional distress do not satisfy the requirements. Following a rambling paragraph averring that a real estate appraiser visited the Property in June of 2019, and that the Property has been visited by individuals confirming whether the Property was occupied, Plaintiff claims that he has been harmed by" having the occupants of the home exposed to the presence of strangers on the property without notice and giving rise to fears of what sinister purpose those trespassers intend." Complaint, p. 11. He goes on to enumerate the various behaviors of his family members while completely failing to allege any impact upon himself.

Additionally, Plaintiff fails to allege that he has experienced any emotional distress whatsoever. Instead, his allegations of physical impacts relate to those experienced by the other members of his household. Complaint, p. 11. Plaintiff simply does not specify any act or omission that would give rise to a claim for relief nor does he claim to have suffered any damages. His pleading is deficient of any allegations that show why he is entitled to relief and he utterly fails to plead any allegations that demonstrate the purported claims—as such Plaintiff's Complaint fails as a whole and must be dismissed. *Northway v. Allen*, 291 Ga. 227, 229-231 (2012).

## CONCLUSION

For the foregoing reasons, Defendants pray that this Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiff's claims with Prejudice.

Respectfully submitted, this 10th day of April 2020.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (telephone)
(404) 921-9016 (facsimile)
bchaness@rlselaw.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 10th day of April, 2020, served the parties in this matter with the foregoing, by placing a true and correct copy of same in the United States Mail, with first-class prepaid postage affixed thereto, properly addressed as follows:

Richard Carruthers
23 Stillwater Trace
Griffin, GA 30223

Cory Sims
100 Galleria Parkway
Suite 960
Atlanta, Georgia 30339

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

18

# EXHIBIT

# "1"

BOOK 4428 PAGE 128

**Prepared By: Albertelli Law**
**Records and Return to:**
Albertelli Law
P O Box 23028
Tampa, FL 33623                Return to: Dawn Tetlak/LRS
JG - 19-014940                            5455 Detroit Rd, STE B
                                          Sheffield Village, OH 44054
                                          440-716-1820
MERS Phone: 1-888-679-6377
MIN#: 10085976100191408I

UCS# 2608784

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA.

2019 JUN 24 A 9: 41

BY [signature]
DEBBIE L. BROOKS, CLERK

### ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, the undersigned assignor ("Assignor"): Mortgage Electronic Registration Systems, Inc., as nominee for Impac Mortgage Corp. dba Cashcall Mortgage, its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, bargain, assign, transfer and convey to the following assignee ("Assignee"): Lakeview Loan Servicing, LLC, whose address is 4425 Ponce De Leon Blvd., MS5-251, Coral Gables, FL 33146.

All of Assignor's right, title and interest under a certain Security Deed, dated November 23, 2016, made and executed by Cristi Carruthers and Richard Carruthers, to Mortgage Electronic Registration Systems, Inc., as nominee for Impac Mortgage Corp. dba Cashcall Mortgage, its successors and assigns, recorded on December 12, 2016 in Deed Book 4119 at Page 39, of the Real Estate Records of Spalding County, Georgia.

This assignment is made this  18  day of, June, 2019, without recourse to Assignor and without representation or warranty by Assignor, express or implied.

Mortgage Electronic Registration Systems, Inc., as nominee for Impac Mortgage Corp. dba Cashcall Mortgage, its successors and assigns

Signed and deliver in the presence of:

[signature]
Witness                  DARCIE LYLE

By: [signature] Shonee Harris
     SHANEE HARRIS
Title:  ASSISTANT SECRETARY

[signature]
Notary Public            ASHLEY N. ROUSE
My Commission Expires   7.31.21

By: [signature] Linda Brown   LINDA BROWN
Title:
     ASSISTANT SECRETARY

ASHLEY N. ROUSE
Notary Public
Commonwealth of Virginia
Registration No. 7768175
My Commission Expires 7.31.21

CORPORATE
~ ~
SEAL

### IN THE SUPERIOR COURT OF SPALDING COUNTY

### STATE OF GEORGIA

RICHARD CARRUTHERS )
)
    Plaintiff )
)
vs. )
)
LAKEVIEW LOAN SERVICING, LLC. )
Assignee of Loan Care Servicing, Inc. via )
Mortgage Electronic Registration Systems, Inc. )
As nominee for Impac Mortgage Corp. )
Dba Cashcall Mortgage )
)
LOAN CARE SERVICING CENTER, INC. )
Dba LOAN CARE )
LOAN CARE, LLC. )
Dba LOAN CARE )
) CASE NO.: 19V-989
)
JAMES E. ALBERTELLI, P.A. )
Dba ALBERTELLI LAW and ALAW )
)
And Unknown Conspirators, Affiliates, Agents, )
And Jane Does and Richard Roes )
)
    Defendants )

### PLAINTIFF'S MOTION TO STRIKE THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND TO STRIKE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now Richard Carruthers, pro se, the above captioned Plaintiff makes complaint pursuant to OCGA 9-11-55 et. seq. to this Honorable Court as follows.

### I.

Plaintiff declares that Defendant LAKEVIEW LOAN SERVICING, LLC , and LOANCARE, LLC have failed to timely answer and have failed to open the default by filing an answer and paying court costs no later than 15 days after the date of the default. Defendant LAKEVIEW LOAN SERVICING, LLC was served

personally by Sheriff's service, and proof of service was filed with the Superior Court on 11 October, 2019. Defendant LOANCARE, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on the same day, 11 October, 2019. Each defendant was represented by counsel Rubin Lubin, LLC and filed tardy answer 20 November, 2019.  No payment of court costs followed within the time prescribed by law, thus defendants did not successfully re-open default.

## II.

Owing to the fact that defendants LAKEVIEW LOAN SERVICING, LLC and LOANCARE, LLC are in default, Plaintiff shows the Court that, Plaintiff is entitled to verdict and judgment by default as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury. Thus, the defendants' motion for judgment on the pleadings is moot, and should also be struck.

WHEREFORE, Plaintiff requests the following relief:

A. Default judgment with grant of permanent injunction against the Defendants;

B.  Money judgment in the amount of $ 88,888;

C. And for such other relief as the Court shall deem appropriate.

_____

Richard Carruthers
Plaintiff, Pro Se

23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX

**VERIFICATION**

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.

SUBSCRIBED AND SWORN this date: _____

_____

My commission expires:                    Notary Public
==========================================================
Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of May, 2020 served all parties in this matter through their counsel by placing a true and complete copy of

**PLAINTIFF'S MOTION TO STRIKE THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND TO STRIKE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

in the U.S. Mail with adequate postage thereon, addressed as follows:


Attorney for Lakeview and LoanCare

Bret J. Chaness, Esquire

Rubin Lubin, LLC

3145 Avalon Ridge Place, Suite 100

Peachtree Corners, GA 30071


Attorney for Albertelli Law

Cory P. Sims, Managing Member

100 Galleria Parkway

Suite 900

Atlanta, GA 30339

## IN THE SUPERIOR COURT OF SPALDING COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
|     Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
|     Defendant | ) |

### PLAINTIFF'S MOTION IN OPPOSITION TO THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS

      Comes now Richard Carruthers, pro se, the above captioned Plaintiff

and moves this Court to dismiss the Answer of the Defendants, and to dismiss the

Defendants' Motion for Judgment on the Pleadings. In support of this motion,

Plaintiff contemporaneously files its brief in support containing argument and

citation of authorities to this Honorable Court as follows.

# I.

Plaintiff shows the Court that Defendant LAKEVIEW LOAN SERVICING, LLC , and LOANCARE, LLC have failed to timely answer and have failed to open the default by filing an answer and paying court costs no later than 15 days after the date of the default. Defendant LAKEVIEW LOAN SERVICING, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on 11 October, 2019. Defendant LOANCARE, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on the same day, 11 October, 2019. Each Defendant was represented by counsel Rubin Lubin, LLC and filed tardy answer 20 November, 2019.   No payment of court costs followed within the time prescribed by law, thus Defendants did not successfully re-open default.

Owing to the fact that Defendants LAKEVIEW LOAN SERVICING, LLC and LOANCARE, LLC are in default, Plaintiff shows the Court that, Plaintiff is entitled to verdict and judgment by default as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a finder of fact. Thus, the Defendants' answer is void, and its motion for judgment on the pleadings is moot, and should also be struck.

WHEREFORE, Plaintiff requests the following relief:

   A.  Default judgment with grant of permanent injunction against the Defendants;

   B.  Grant of Judgment on the Motion of the Plaintiff;

   C.  Money judgment in the amount of $ 88,888;

D. And for such other relief as the Court shall deem appropriate.

_____

Richard Carruthers
Plaintiff, Pro Se

23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX

**<u>VERIFICATION</u>**

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.


_____

SUBSCRIBED AND SWORN this date: _____


_____


My commission expires:                     Notary Public
=========================================================
Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 11th day of May, 2020 served all parties in this matter through their counsel by placing a true and complete copy in the U.S. Mail with adequate postage thereon, addressed as follows:

Attorney for Lakeview and LoanCare

Bret J. Chaness, Esquire

Rubin Lubin, LLC

3145 Avalon Ridge Place, Suite 100

Peachtree Corners, GA 30071


Attorney for Albertelli Law

Cory P. Sims, Managing Member

100 Galleria Parkway

Suite 900

Atlanta, GA 30339

## IN THE SUPERIOR COURT OF SPALDING COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
|     Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
|     Defendants | ) |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS OPPOSITION TO THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND IN OPPOSITION TO THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now Richard Carruthers, pro se, the above captioned Plaintiff and moves this Court to dismiss the Answer of the Defendants, and to dismiss the Defendants Motion for Judgment on the Pleadings. In support of this motion, Plaintiff contemporaneously files its brief in support containing argument and citation of authorities to this Honorable Court as follows.

## STATEMENT OF FACTS

Defendants open their brief communicating the same hubris and disparagement of the Plaintiff's causes of action without consideration of the facts viewed from an ethical or a legal framework. This arrogance has plagued the lender-borrower relationship from the onset.

At the time of filing this complaint, the Plaintiff faced an imminent unlawful non-judicial foreclosure caused by the wanton, capricious, and on-going errors in judgment and practices of the Defendants, who refused to abide by the letter and spirit of the lender-borrower agreement (the Security Deed) by actively interposing the presence of the lender between the borrower and the tax authority where the property is domiciled, notwithstanding adequate language within the lender drafted security deed to protect the Defendants from any peril, and specifically to protect against a tax lien (Complaint exhibit # 1, paragraph 4, page 5) that could take priority over the lien position of the lender. This Plaintiff alleges that Defendants' behavior constitutes a tort in violation of the rights of the Plaintiff to be free of interference in the negotiation of property tax matters with a state official.

The parties to the action forming the case at bar entered into an agreement intended to govern a residential loan transaction on improved property located at 23 Stillwater Trace, Griffin, Spalding County, GA 30223 on November 23, 2016. The residential loan was 100% guaranteed by a U.S. Government Department of Veterans Affairs guarantee.

Evidence of that lender drafted agreement, the Security Deed (complaint exhibit 1), provides for the periodic monthly payments of principal and interest,

and it requires the inclusion of payments for impounds to cover real estate taxes and home owner's insurance with payments beginning on January 1, 2017, in the monthly amount of $ 2,713.04.

On or about March 07, 2017, Plaintiff made application for homestead exemption, which was granted by the Spalding County Tax Assessor with a tax classification of L7, which resulted in a zero tax liability on the property for tax year 2017. Notice of the new tax status was delivered by Plaintiff to Defendant, refund of the tax impounds was requested, and subsequently made on or about June 08, 2017, which resulted in a new periodic monthly payment of $2247.47.

Though, homestead tax from year to year is typically automatically renewed, the Plaintiff became aware that its 2018 tax status would not be continued under the terms of the 2017 tax year zero-tax status. On June 25, 2018, Plaintiff made timely notice of appeal to the tax authority which did stay any tax due status and continued the Plaintiff in a zero-tax due status (complaint exhibit 18). There was no change with the monthly payment to the Defendants, and the lender drafted security deed does not speak to any notice requirement from borrower where no tax change is contemplated. Plaintiff had no duty to notice Defendants of the tax appeal.

On October 15, 2018, Plaintiff became aware that Defendant had pre-emptively made unsolicited payment of the disputed 2018 property taxes in the amount of $4954.38 to the detriment of the Plaintiff's tax appeal and created an escrow shortage. Plaintiff made immediate notice and demand to Defendant, that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff continued to make, and Defendant continued to accept the periodic monthly payments in November 2018 that did not include an impound for real estate taxes. The December 2018 monthly payment without impound for real estate taxes was tendered by Plaintiff to Defendant, but was not properly credited, though it was applied in January 2019 in incorrect accounting amount and in variance to the Security Deed. Though, Plaintiff has steadfastly noticed Defendant of the payment accounting dispute, Defendant, in contravention to the terms of the Security Deed has refused to correct the issue.

On February 11, 2019, Plaintiff became aware that Defendant had pre-emptively made a second unsolicited payment of the disputed 2018 property taxes in the amount of $4803.76, again to the detriment of the Plaintiff's tax appeal and increasing the escrow overdraft. Plaintiff made immediate notice to Defendant, including demand to Defendant that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff from January 2019 thru June 2019 has made copious volume of communication with Defendant to correct all payment disputes, to no avail. (complaint exhibit 2.) Defendant has acted with bad faith to coerce Plaintiff into making payments to Defendant including an impound for real estate taxes which are not due and owing by Plaintiff, in contravention to the terms of the Security Deed. (complaint exhibit # 1, p. 1-13).

Continually, Defendants have made visits to the property comprised of actual physical trespasses, and threatening drive-bys that violate the quiet enjoyment of the subject property, unnerve the Plaintiff's family, and cause the

Plaintiff disgrace and embarrassment within the family as Plaintiff is shown to be powerless to stop these assaults.

## I.

Plaintiff shows the Court that Defendant LAKEVIEW LOAN SERVICING, LLC , and LOANCARE, LLC have failed to timely answer and have failed to open the default by filing an answer and paying court costs no later than 15 days after the date of the default. Defendant LAKEVIEW LOAN SERVICING, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on 11 October, 2019. Defendant LOANCARE, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on the same day, 11 October, 2019. They initially appeared at a rule NISI hearing held on October 21, 2019 where each was represented by Danielle Weit, of Albertelli Law. On information and belief Defendants Lakeview and LoanCare became subsequently represented by counsel Rubin Lubin, LLC and filed tardy answer 20 November, 2019.  No payment of court costs followed within the time prescribed by law, thus Defendants did not successfully re-open default.

Pursuant to O.C.G.A. 9-11-55 (2010) 9-11-55. Default judgment. (a) When case in default; opening as matter of right; judgment. If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall

be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the Defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a Defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

Owing to the fact that Defendants LAKEVIEW LOAN SERVICING, LLC and LOANCARE, LLC are in default, Plaintiff shows the Court that, Plaintiff is entitled to verdict and judgment by default as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a finder of fact. Thus, the Defendants' answer is void, and its motion for judgment on the pleadings is moot, and should also be struck.

## II.

The Defendants claim that Plaintiff is in default under the terms of the Security Deed authorizing foreclosure by the lender. Plaintiff disputes the position of the Defendants, denies the claimed default, and counters asserting

that it has made tender of an amount at each periodic payment that includes principal, interest, and insurance. The tax portion, which was not due, nor disputed between the lender and borrower since June 2018 was not included by mutual agreement resultant from the award of an L7--zero tax status in 2018. Plaintiff points to the fact that the lender actually refunded the excess escrow on borrower request in June 2018. Thus, a continuation of payments without real estate tax escrow was the agreement of the parties, though no modification or other writing was requested, executed, or contemplated by either party as the terms of the Security Instrument were being followed.

Plaintiff shows the Court that the Security deed was drafted by the Defendant and is subject to the legal concept *contra proferentem*. **Contra proferentem** (Latin: "against [the] offeror"), also known as "interpretation against the draftsman", is a doctrine of contractual interpretation providing that, where a promise, agreement or term is ambiguous, the preferred meaning should be the one that works against the interests of the party who provided the wording. The doctrine is often applied to situations involving standardized contracts or where the parties are of unequal bargaining power, but is applicable to other cases. (American Law Institute 1981, § 206, comment. b)

The security deed (complaint exhibit # 1, p. 4) at paragraph 3 says,

"Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of **amounts due** for: (a) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property... " (emphasis supplied).

In pleadings found at (complaint exhibit # 4, p. 20), Plaintiff shows the Court that per the tax authority, "There will be no taxes due until the (the tax matter) is resolved."

It follows that if no taxes are due, a default predicated upon an amount not due and owing cannot attain priority over the Security Instrument as a lien or encumbrance on the Property. Nor can any theory be presented that non-payment of an item that was not due in the previous period, not due in the current period, and arguably not due in the upcoming period could form the basis of a default under the note or under the Security Instrument. The Plaintiff was **not** in default because **no taxes were due**, notwithstanding the claims of the Defendants otherwise.

## TORTIOUS INTERFERENCE.

Defendants alternate between asserting privity to the contract between the tax authority and Plaintiff (a tacit admission), and making the assertion that no contract or relationship exists between the tax authority and the Plaintiff. Plaintiff shows the Court that the contract between the tax authority and the Plaintiff is codified by law. The Defendants argue that Plaintiff has no foundational basis to invoke a claim of tortious interference against these Defendants claiming privilege. They cite Dalton Diversified, Inc. v. AmSouth Bank, 270 Ga App. 203, 209, 606 S.E. 2d 892, 898, (2004). In the Dalton case AmSouth Bank, the Defendant held a well perfected security interest that as its predicate was established to receive and fund third party invoices. As a necessity to this contractually agreed on-going performance, AmSouth had certain well

documented rights which the court found established AmSouth's "privilege," which barred a claim of tortious interference.

In this case, however, the Security instrument does –not–carve out any rights permitting the lender to intervene between the tax authority and the Plaintiff. Again, raising the concept of *contra proferentem,* the drafter of the Security Instrument in this case could have specified a right to communicate, negotiate, defend, abrogate, etc. all homestead tax matters. It did not.

Instead, the contract–the Security Instrument specifies what actions the Lender and Borrower may take with each other should a matter between the tax authority and the borrower develop that could attain lien priority over the first lien of the Defendants. Defendants have only successor rights pursuant to a tax default after proper notice to the borrower.

Defendants have no contract rights, or privilege with the tax authority, absent a failure by borrower under the Security Instrument. Per the Security Instrument (Complaint exhibit #1, paragraph 4, p.5), the lender must give notice of a tax default by borrower resulting in a lien that would take priority remaining uncured for ten (10) days before borrower could be declared in default. This is hardly a position of privilege. A *contra proferentem* analysis affirms that these Defendants are strangers, without privilege unless and until the borrower abrogates its duty by failing to pay or defend the first lien of the Defendants. The Security Instrument never carves out a right for the Defendants to act in the borrower's stead. The remedies are those defined by default, not substitution.

The tax authority did not send a bill for past due taxes to the lender nor to the borrower because no taxes were due. Yet the lender inserted itself into the

relationship between the tax authority and the borrower, to the detriment of the borrower's tax appeal. Defendants' acts did jeopardize the ability of the Plaintiff to pay its fair tax, maintain the property, and retain the property without slander to its title, as the Defendants did actually proceed to foreclosure. The Plaintiff was harmed by the acts of the Defendants.

The Security deed is contract A-B between lender and borrower. The contract B-C is the contract between borrower and tax authority. There is to interwoven A-B-C contract between the parties as Defendants suggest, nor an A-C agreement, either. The analysis is easily proven by simply removing the lender held escrow, and the operations between all parties are unaffected, except to remove the Defendants' proclivity to interfere. Notice, the pleadings (complaint exhibit #6, p. 22) show that there is no legal requirement for lender held escrow under this loan. It would seem these Defendants mistake themselves as property owners renting real estate to tenants, instead of lenders lending funds to borrowers. The motives for Defendant's actions, likely myriad, are outside the present purview of this Plaintiff's discussions herein.

Defendants state they had no notice of Plaintiff's tax appeal. Yet the pleadings (complaint exhibit # 2, p. 14) show that the Defendants were noticed on October 16, 2018 the morning after the first interference. Interestingly, in mitigation by Plaintiff, a visit to the tax authority that same day resulted in the tax authority agreed to, and  placing the uncashed check of the Defendants into processing suspense in accord with the law governing tax appeals in Spalding County.

The pleadings show (complaint exhibit # 2, p. 14) that subsequent to notice, the Defendants again interfered on February 11, 2019 and were again noticed by Plaintiff, to no avail. This created a further escrow account shortfall, giving rise to the Defendants' misplaced and misguided foreclosure actions against this Plaintiff.

All Georgia citizens are in contract with the appropriate jurisdictional authority by virtue of the laws and Constitution of the State and the nation. Unless a third party is processing a claim between itself and the legal authority pursuant to contract, any interference giving rise to a harm is likely a tort. where both the citizen and the jurisdictional authority each has the duty to follow the law, and the procedures thereunder. In the case of real estate homestead, the Plaintiff has a duty to contribute its fair share of revenue to the real estate authority, and the real estate authority has the duty to collect the amount legally required of the Plaintiff. At minimum, that is a business analogous relationship. Citizens pay for services and the jurisdictional authority provides service outputs for those payments. The outputs in this case include police protection, fire protection, code enforcement, and notice to the world of the property rights that the Plaintiff has acquired. In turn, the cost for this bundle of outputs is determined by a published formula decided by the legislature and its actors. This is not dissimilar to purchase of utilities, which are regulated by a jurisdictional authority.

However, given a trial, the Plaintiff is confident it can prove the motives of these Defendants, and every element of tortious interference in this case to the satisfaction of the Court where the Plaintiff asserts it would prevail at trial.

**BREACH OF CONTRACT**

Plaintiff asserts its claim of breach based on the legal duty of Defendants to accurately account, credit, and account for periodic payments as set out in the contract and their refusal or their inability to do so. Defendants erroneously state that a unilateral modification of periodic payments is attempted by Plaintiff. That is categorically false. All payments made by Plaintiff in all the months from loan inception thru December 1, 2018 were the mutually agreed sum. On or about December 01, 2018, Defendants made departure from timely acceptance of the periodic payment and failed to apply the payments in conformity to the Security instrument. The pleadings (complaint exhibit 1, paragraph 2, p. 4) states that ...

> [A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the NOTE; (b.) principal due under the Note; (c.) amounts due under Section 3.

In the case at bar, Plaintiff contends the lender is prohibited from refusing the payments of the borrower if tendered in amount sufficient to pay (a.) interest and (b.) principal. The lender may say not true, but based on the contract language the answer is either as the Plaintiff asserts, or the answer is ambiguous. In either scenario, because the Defendants drafted the agreement, its interpretation is subject to resolution under the concept of *contra proferentem*. By extension, any refusal where a payment adequate to cover principal and interest, yet rejected by the lender is a breach, and shows wanton and capricious disregard for contract law.

The Plaintiff contends that the lender must first apply all periodic payments in this -- a,b, c -- order, and  had Defendants not breached this provision, an acceleration would have been remote, if not impossible. The lender would have seen that his duties under the Security Instrument would have been to collect any past due escrow for taxes and insurance over 12 months (Complaint exhibit #1, p.5), but not institute foreclosure procedures. Since a tax bill would have revealed that no taxes were currently due, there could have been no escrow shortage, and again, no foreclosure proceedings would have been indicated.

Powers of sale in deeds...shall be strictly construed, and shall be fairly exercised. O.C.G.A. 23-2-114. The actions of the Defendants are blatantly unfair under the facts and the circumstances of this case and demonstrate a breach of contract.

Plaintiff is grievously damaged by Defendants' breach. What remains unresolved is an understanding of the motives that drove Defendants in this course of action. Jettisoning the philosophical arguments at this time, Plaintiff should have its chance at trial to prove all elements of the breach, and damages.

## BREACH OF THE COVENANT OF GOOD FAITH

Unlike the facts Defendants rely on in Ceasar v.Wells Fargo Bank, N.A. 322 Ga App. 529, 533, (2) (c ), 744 S.E.2d 369 (2013) where a naked claim of breach of good faith and fair dealing was asserted,  the claim of breach of good faith and fair dealing in this case is well supported by a plethora of evidence made in these pleadings. As foundation, Plaintiff points to the Security Instrument, which shows great specificity in borrower required acts, yet displays equally great vagueness, ambiguity, and latitude bordered by capriciousness governing lender

acts, coupled with behaviors that are minimal burdens upon the lender, yet have great worth to the borrower. An impartial finder of fact must be struck by this dichotomy.

On information and belief, the periodic monthly statements from lender to borrower have been re-directed away from the mail address of borrower to the mail address of Defendant's agent Albertelli Law, care of Cory Sims, Esquire in an effort to thwart Plaintiff's ability to perform its duties under the Note, the Security Instrument, and under the Deed. Such bad acts cannot be considered as good faith or fair dealing. At no place in any writing is the lender permitted to divert the periodic notices due borrower from the address of notice.

Powers of sale in deeds...shall be strictly construed, and shall be fairly exercised. O.C.G.A. 23-2-114. The actions of the Defendants are massively unfair under the facts and the circumstances of this case and support Plaintiff's contention of breach of the covenant of good faith and fair dealing.

Under OCGA § 9–11–12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

As set out above, the plain meanings contained in the lender authored Security Instrument gave the Defendants every protection imaginable against virtually defenseless borrowers in Georgia. Thus, the motives at play in the minds of the Defendants scream out for an answer, and must be addressed.

It seems to this Plaintiff, that these Defendants entered the lender-borrower relationship with only the objective of bettering the lender's financial position at the expense of the borrower by collecting (late) fees, holding non-interest bearing escrow balances, and ultimately conscripting rapidly rising equity balances by engaging in a practice of equity stripping Georgia real estate owners with the impunity provided by OCGA 44-14-162, et. seq.

This Plaintiff has shown by the sum of the pleadings and in this response that the conflict between the parties was readily remedied well short of court action. The power to avoid this problem rested upon one lender decision—accept payment without impounds for real estate taxes --provably not due. Yet, the hubris of these Defendants reveal that they have no regard for the little people that form the clientele that they lend to, though in Georgia law, they have no such duty.

The claim of breach of good faith and fair dealing is well supported by a plethora of evidence made in these pleadings. Its foundation is the Security Instrument which shows great specificity in borrower required acts, yet displays equally great vagueness, ambiguity, and latitude bordered by capriciousness governing lender acts. There is –no—legal basis to require a lender held escrow on a VA loan. What there is, is the formidable stick of OCGA 44-14-162, et. Seq held at the 60-day ready to club the consumer life out of any Georgia purchase

money borrower that does not dance to the music of lenders of the ilk of these Defendants and their assassin trained attorneys.

OCGA 44-14-162, et. seq., the non-judicial foreclosure statute, substitutes private remedy pursuant to contract terms, for that of a thoughtful, educated, principled jurist who applies the laws to the facts of each case. The legislature believed that similarly principled parties operating as lenders could be trusted to carry out the same judgments as would impartial jurists hearing the facts of the case and applying the applicable law, yet the rise of predatory lending has been a too often result of the legislative latitude permitted in Georgia non-judicial foreclosure law.

It is attractive to lenders of poor character to operate in a state where they can speedily foreclose with little notice or legal limitation. The reality is the lender decisions are not often made by people of the caliber envisioned by the legislature. The decisions are often made by overworked clerks, sometimes heady, even haughty, with the power that their position brings to the consumer marketplace and the intimidation / coercion power attendant thereto. (complaint exhibit #7, p. 23-24).

Notice that the power to avoid this problem rested upon one lender decision—to accept a payment without impounds for real estate taxes. The bad decision was compounded by a breach of the terms of the Security Instrument by the lender, without fear of redress because the lender could always invoke OCGA 44-14-162, et. seq. The Security Deed permitted this saving action by waiver or modification (Complaint exhibit #1, paragraph 3, p.4). The VA guarantee terms permitted this by directive since 2004 (Complaint exhibit #1, p.22). Yet these

lenders found that the property on the Security Deed was worth at least $ 600,000, an amount guaranteeing a windfall profit to the lender if foreclosed, lender knocked off, and subsequently resold quickly post foreclosure.

This loan poses no risk to the lender, because it has a 100% VA guarantee. There was never a reason to force the borrower out of their family home, but for the chance to earn a windfall foreclosure profit, while also collecting a guaranteed principal collection from the US Government Department of Veteran's Affairs. As a business model, it has few flaws. However, as literature reminds, all the great men of antiquity had but a single flaw, yet the single flaw was sufficient to prove their undoing, and fate them to demise and failure.

**WRONGFUL FORECLOSURE**

Defendants assert a consistent position denying the facts of this case. Plaintiff has continually tendered the monthly payment amount last accepted between the parties--$ 2247.47. This amount includes principal, interest, and escrow for the homeowners' insurance. It did not include payment for a sum only imagined—the zero real estate property tax. It is clearly plead that no taxes are due per (complaint exhibit #4, p. 20).

Thus, any action based on an amount not due is erroneous. For the Plaintiff to pay an estimate would only give rise to a view that Plaintiff had ratified a known falsity. That a lender would persist in the costs and time wasted in pursuit of a foreclosure against a party ready, willing, and able to pay is driven by a logic that escapes this Plaintiff.

It is nothing short of equitable to pay the last amount mutually agreed between the parties. The lender could only be benefitted by continuing to accept

the last agreed payment amount, while retaining the considerable latitude afforded by the terms contained in the Security Instrument. This is true, unless... there is some ulterior motive.

The Plaintiff's complaint for wrongful foreclosure is based on the lender taking every act to foreclose, however being blocked by the courts and the presence of the Plaintiff at the courthouse steps where the Defendants deployed their title agent—Mike Maranello of Traditional Title, 678 895-2739 to foreclose the property of Plaintiff on November 05, 2019, notwithstanding having more than 15 days notice that the sale was enjoined. But for the physical presence of the Plaintiff, the wrongful foreclosure would have been completed.

The Court should take notice of this Defendant behavior and sanction them for ignoring an Order of the Court. The property shows it was foreclosed in the credit bureau. Thus, the Defendants have done all but collect the foreclosure sale funds which would make their foreclosure complete.

Diligent search having been made, Georgia law appears to be silent on tender. "Refusal of tender under the common law had certain legal effects. A tender of payment may be defined as "an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation."' Tender of payment typically arises within the law of commercial paper when a party obligated on a negotiable instrument, at its maturity date, tenders the sum due to the holder. If tender is refused, and the holder subsequently brings suit to collect on the obligation, the party obligated may assert the prior tender as a defense to liability for interest, costs, and attorney's fees accruing on the instrument after the effective date of the

tender. Article Three of the Uniform Commercial Code (Code) has codified a tender of payment rule for commercial paper in section 3-604:

(1) Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees.

(2) The holder's refusal of such tender wholly discharges any party who has a right of recourse against the party making the tender.

(3) Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender. Tender of payment under U.C.C. Section 3-604.

Pursuant to O.C.G.A. 23-3-2 and O.C.G.A. 23-3-3 Plaintiff proffers U.C.C. Section 3-604 as foundation for its argument, asserting that if U.C.C. Section 3-604 was properly plead and admitted for the purpose, herein, the position of the Plaintiff would readily be seen to conform to law based on a far older, virtually forgotten set of rules than those typically applied to real estate disputes in Georgia at this time.

Plaintiff asserts that estoppel is barred by equity, and that Plaintiff approaches the Court with "clean hands" seeking equitable relief.

**FAIR DEBT COLLECTION PRACTICES ACT—**

**FDCPA 15-USC 1692 et seq.**

**and**

**Negligent Infliction of Emotional Distress**

The Plaintiff, hereby adopts by reference the enumeration of acts contained in the pleadings that form its claim of violation of the FDCPA. Plaintiff asserts these violations as a bar against foreclosure, as evidence of breach of contract, breach of the covenant of fair dealing, as grounds for damages sustained by Plaintiff, and asserts these claims against all named Defendants.

The Plaintiff makes request for leave of the Court to introduce foreign law at the time of trial to meet the burden of pleading the FDCPA claims raised in the initial pleadings.

Plaintiff also shows the Court that on information and belief, the periodic monthly statements from lender to borrower have been re-directed away from the mail address of borrower to the mail address of Defendant's agent Albertelli Law, care of Cory Sims, Esquire, a further act in violation of the FDCPA.

At this time, Plaintiff points to his request for preservation of this cause of action for trial, where Plaintiff will prove all necessary elements with the specificity and the thoroughness required to prevail at trial in a court of law.

The same request for preservation of the cause of action regarding the Negligent Infliction of Emotional Distress claim is hereby made to the Court. Plaintiff will prove all elements with the specificity and thoroughness required to prevail in a court of law at trial.

Under OCGA § 9–11–12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce

evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

Monthly, Defendants have made visits to the property comprised of actual physical trespasses, and threatening drive-bys that violate the quiet enjoyment of the subject property, unnerve the Plaintiff's family, and cause the Plaintiff disgrace and embarrassment within the family as Plaintiff is shown to be powerless to stop these assaults. Plaintiff is faced with the choice of erecting physical barriers to safeguard his family from these harms executed by the Defendants.

Plaintiff adopts the totality of its pleadings and asserts that the pleadings of record present a colorable claim that meets the survivability tenets above plead. For the numerous reasons made, the motion of Defendants should stand denied as they have been unable to meet the test required under the law.

## CONCLUSION

The Plaintiff has shown a plethora of acts by the Defendants that have injured the Plaintiff. All of which will be proven at trial under the rules that permit both sides to distill the truth of the matter for the factfinder to determine a fair, legal , and ethical outcome. The Plaintiff begs the Court's indulgence with its lay presentation, and urges that the entire pleadings be examined to inform the Honorable Court of the facts and merits that the Plaintiff asserts herein.

No party, however much moneyed, should be permitted to trample over those who approach it in a fair bargain for use of funds, at the cost established by the moneyed party, on terms permitting repayment of those funds within the bounds ascribed by law as fair.

The Plaintiff humbly asks for the protection of the Court by making judgment and award in this case in favor of Plaintiff on all counts.

WHEREFORE, Plaintiff requests the following relief:

A. Default judgment on Defendants with grant of permanent injunction against the Defendants;

B. Dismissal of Defendants motion;

C. Judgment for Plaintiff on the pleadings;

D. That order issue modifying the Security Instrument removing the Lender right to collect periodic payments for tax escrow as an act constituting default if not paid by Borrower;

E. Money judgment in the amount of $ 88,888;

F. And for such other relief as the Court shall deem appropriate.

_____

Richard Carruthers
Plaintiff, Pro Se

23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX

# **VERIFICATION**

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.

SUBSCRIBED AND SWORN this date: _5 - 11 - 2020_

My commission expires: _Sept 14, 2020_   Notary Public

=================================================

Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of May, 2020 served all parties in

this matter through their counsel by placing a true and complete copy of

### PLAINTIFF'S MOTION IN OPPOSITION TO THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS

in the U.S. Mail with adequate postage thereon, addressed as follows:

Attorney for Lakeview and LoanCare

Bret J. Chaness, Esquire

Rubin Lubin, LLC

3145 Avalon Ridge Place, Suite 100

Peachtree Corners, GA 30071


Attorney for Albertelli Law

Cory P. Sims, Managing Member

100 Galleria Parkway

Suite 900

Atlanta, GA 30339